284 So.2d 763 (1973)
STATE of Louisiana, THROUGH the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee-Respondent,
v.
James P. HOYT, Jr., et ux., Defendants-Appellants-Relators.
No. 53279.
Supreme Court of Louisiana.
October 29, 1973.
F. Jean Pharis, Pharis & Pharis, Alexandria, for defendants-appellants-relators.
D. Ross Banister, Jesse S. Moore, Jr., William W. Irwin, Jr., Johnie E. Branch, Jr., Jerry F. Davis, Department of Highways, Baton Rouge, for plaintiff-appellee-respondent.
TATE, Justice.
In this quick-taking, La.R.S. 48:441 et seq., the plaintiff Department expropriated about one-third of a corner lot used for service station purposes. The court of appeal affirmed the award, 272 So.2d 768 (La.App. 3d Cir. 1972), one judge dissenting. We granted certiorari, 273 So.2d 842 (1973), primarily to review the method of valuation used by the majority of the court of appeal.
I. "Average unit value" appraisal vs. "front land-rear land" technique.
The majority of the court of appeal held that, where property is taken for highway *764 purposes, the award for the land taken should be based upon its average per-acre or per square foot value; that is, the award for the part taken should bear the same proportion to the value of the whole as the area taken bears to the total area of the parent tract. The majority relied upon State, Department of Highways v. Monsur, 258 So.2d 162 (La.App. 3d Cir. 1972) and State, Department of Highways v. Medica, 257 So.2d 450 and 454 (La.App. 3d Cir. 1972).
The dissenting judge recognized that, under the facts of this case, this method of valuation produces the same award for the land taken as does the "front land-rear land" technique, to be discussed below. However, as he points out, by this method of valuation, "land fronting on a highway would be assigned the same value as land lying several hundred feet back from the highway, although the highest and best use of the former might be highway commercial, obviously giving it a higher market value than the latter, whose highest and best use might be agricultural or residential." 272 So.2d 775.
Our state constitution requires that just and adequate compensation be paid for property taken for public purposes. La. Const. of 1921, Art. I, Section 2. Where property is taken for highway purposes, the landowner must be awarded the full value the property possessed before the taking, "without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work." La.R.S. 19:9. See also Civil Code Article 2633.
Therefore, as stated in State, Department of Highways v. Landry, 171 So.2d 779, 781 (La.App. 3d Cir. 1965), certiorari denied, 247 La. 676, 173 So.2d 541 (1965) ("no error of law"):
"We regard the proposition as settled by Louisiana jurisprudence and statute, therefore, that landowners are entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because a new highway frontage will be provided, by reason of the taking, for formerly-rear portions of the parent tract. To allow such a deduction from the market value of property taken, would be to allow deduction from this value for benefits which will be derived because of the contemplated improvement for which the expropriation was made, in direct contravention of LSA-R.S. 19:9, the legislative provision forbidding landowners from being deprived for such reason of the true market value of their property which is expropriated for public purposes."
As summarized by the excellent treatise, Dakin and Klein, Eminent Domain in Louisiana, p. 173 (1970), our state's jurisprudence holds: "* * * the highest and best use of the land actually taken is to be considered in determining fair market value. When there is a partial taking and the land expropriated has a different highest and best use than the remainder of the landowner's tract, it appears that the courts will value the land taken separately from the remainder on the basis of its own highest and best use and will not consider the value of the land taken in relation to the whole tract."
The landowner is thus to be awarded the actual market value of the particular portion of the property taken, valued according to its highest and best use. He is not limited to its average per-acre value as a pro rata portion of the parent tract where the front portion has a different and higher best-use value.
See: State, Department of Highways v. Spera, 272 So.2d 765 (La.App. 3d Cir. 1972), certiorari denied, 272 So.2d 695 (La.Sup.Ct.1973) ("No error of law."); State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3d Cir. 1972), certiorari denied, 272 So.2d 696 (La.Sup.Ct. 1973) ("No error of law."); State, Department of Highways v. Stegemann, 269 So.2d 480 (La.App. 3d Cir. 1972), certiorari denied, 271 So.2d 533 (La.Sup.Ct.1973) ("No error of law."); State, Department of Highways v. Bertrand, 184 So.2d 611 *765 (La.App. 3d Cir. 1966); State, Department of Highways v. LeDoux, 184 So.2d 604 (La.App. 3d Cir. 1966); State, Department of Highways, v. Landry, 171 So.2d 779 (La.App. 3d Cir. 1965), certiorari denied, 247 La. 676, 173 So.2d 541 (1965) ("no error of law"); State, Department of Highways v. Circle Center Corp., 148 So.2d 411 (La.App. 1st Cir. 1962), certiorari denied, 243 La. 1011, 149 So.2d 765 ("no error of law").
As the cited decisions show, where the evidence shows that the front portion of the tract taken has a higher value than the rear portion not taken, the landowner must be awarded the higher value for the land actually taken rather than an averaged value based on its proportionate portion of the land-area of the parent tract.
Usually, however, there is no market value for a strip taken for highway or other public-servitude purposes. The landowner would not normally sell at any reasonable price the portion cutting his tract off from the highway or (in the case of other servitudes) bisecting it. There is no willing buyer (except the servitude-seeker) for the strip to be taken, normally useless because of its small-depth and its shape for any other purpose than the public servitude.
For this reason, in holding that the landowner must receive the actual market value of the front strip taken, the courts have valued it at the price per unit (square foot, front foot, acre, etc.) that a willing seller would pay for it at its highest and best use as if the strip taken were part of a marketable front area of the parent tract sold for such highest and best use. As the dissent here in the intermediate court noted, 272 So.2d 776:
"* * * A number of the above cited cases, including, originally, Landry, supra, and most recently, Stegemann, supra, stand for the proposition that once the use tract is defined, i. e., it is determined what portion of the parent tract has a highest and best use as commercial property, the average unit value of the use tract may be employed to ascertain the value of the expropriated portion. In such a situation the expropriated portion would be assigned a value which bears the same proportion to the overall value of the use tract as its size bears to the size of the entire use tract."

II. Award for Present Taking.
Applying these principles here, we cannot say that the trial court committed manifest error in its award for the strip taken.
Before the taking, the tract was a corner lot approximately 200 feet square. All four experts conceded its highest and best use to be as a service station property, admittedly one of the highest per-foot highway frontage valuations. All appraisers valued the land in the area of $40,000.
The partial taking took approximately 74 feet off the main highway front and an additional 15 feet along most of the sidestreet. The L-shaped taking took .33 acres out of the .925 acre parent tract, some 35.7% of its area. The remainder will be a half-acre corner lot, with a highway frontage of 185 feet (severely limited in highway accessibility, however, see III below) by a depth of about 136 feet.
The landowners' two experts testified that the front 100-foot portion of the lot had a greater value than the rear 100-feet. However, we find no manifest error in the trial court's acceptance of the Department's experts' testimony that the entire parent tract, valued at its highest and best use, possessed the same market value without differentiation between front and rear portions.
We further find no manifest error in the trial court's determination of the land-value of the entire tract before the taking as being $38,120, and its award to the landowners of $13,600 as the pro rata value of the portion taken. The award of $38,000 for the improvements (all of which were on the front portion taken) is likewise supported by the evidence.
*766 III. Severance Damages.
We granted review also to consider the landowners' substantial contention that the trial and intermediate courts disallowed severance damages, in the face of substantially uncontradicted testimony to the contrary. We agree with the dissenting judge of the court of appeal that such severance damages should have been allowed.
Severance damages are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State, Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261 (1960). The trial court accepted the Department's experts' testimony, which without elaboration assumed the property retained the same highest and best use as service station property after the taking.
However, the testimony at the trial showed the following: The remainder was still a corner lot and had sufficient area on which to construct a service station. However, it is now separated from the main highway and the side-street by a deep ditch crossed by two driveways from the highway and one from the side-street.
The two highway driveways are located so that eastbound motorists can drive on and off the property. However, while this is true for passenger cars and other light vehicles, large trucks (commonly 50-60 feet in length) will not be able to enter and leave the premises conveniently and without blocking other vehicles; for, under the construction plans and highway-department regulations, the driveways angle in and out of the property with only 15 feet between them on the highway front of the remainder. Approximately thirty per cent of the volume sold at this highway location was to these large trucks. (Additionally, westbound traffic cannot conveniently get access to the site, since the turnarounds across the median are situated too distantly apart.)
An expert on locating service stations testified that, because of this limited access, the corner site had no more value as a service station site. The inconvenience of access because of the driveways was corroborated by the department's engineer, as well as by two lay witnesses.
The landowners' two expert appraisers testified, respectively that the property had lost 50% and 60% of its value for its highest and best use as service station property because of this loss of access. The department's expert appraisers did not take into consideration this loss of access, in assuming there was no severance damage because the remainder was still a corner lot.
The preponderance of the evidence thus supports a finding that the remainder has sustained severance damages by reason of its loss of its highest and best use as service station property, which the department's experts concede is the highest value for highway frontage in the area. In the absence of other testimony affording a basis for determining such severance damages, we accept the judgment of the landowners' expert appraisers that the remainder had suffered a loss in value of 50% because of loss of its highest and best use as a service station property due to the limited accessibility.
The value of the remainder before the taking was $24,520. The landowners are entitled to 50% of this amount, or to $12,260.

Decree
For the reasons assigned, the award of the landowners is increased by twelve thousand two hundred sixty and no/100 ($12,260.00) dollars, together with legal interest; as thus amended, the trial court judgment is affirmed.
Amended and affirmed.
BARHAM, J., concurs.
DIXON, J., dissents.