DOMENGEAUX, Judge.
This is an expropriation suit which is before this court for a second time. Consolidated herewith is the companion case, State of Louisiana, Through the Department of Highways v. Mondel, Inc., 301 So.2d 672, (La.App. 3rd Cir. 1974). We are deciding both cases this date and in this opinion will discuss issues common to both companion appeals.
In August, 1970, plaintiff-Louisiana Department of Highways expropriated a strip of land owned by the defendant, Hab Mon-sur Corporation, fronting on Louisiana Highway 1 in Alexandria, Louisiana, pursuant to the provisions of LSA-R.S. 48:441-460, and deposited $15,622 in the registry of the court as just compensation. The defendant withdrew the deposit and answered, requesting an increase in compensation to $150,000 (less the sum withdrawn). The trial court subsequently awarded the defendant judgment for $142,337.50. The Department of Highways appealed the judgment requesting a reduction in the award.
*669 This case was consolidated for trial and appeal with another expropriation suit instituted by the plaintiff against Mondel, Inc. affecting two adjoining tracts of land, also fronting on Louisiana Highway 1 and adjacent to the aforementioned Hab Mon-sur property. The plaintiff deposited $60,801.00[1] as the estimated value of the property taken and defendant answered requesting $128,040.00. After trial the district court rendered judgment awarding defendant-Mondel, Inc. $114,450.00. Plaintiff likewise appealed this award as being excessive.
On appeal defendants in both cases filed a joint motion in this court to remand the consolidated cases to the district court in order that the complete testimony of two witnesses could be taken and placed in the transcript. During the first trial substantial portions of the testimony of these witnesses were not transcribed due to a recording machine failure. This court reversed the judgment in both cases and remanded each to the trial court for additional evidence to be presented by either party “. . . as to the value of the parcels of land being taken and as to the amount of severance damages which may have been sustained . . .” These cases are reported at La.App., 262 So.2d 560 and La.App., 262 So.2d 563.
Upon remand, due to the illness of the presiding judge at the first trial, a different district judge heard the case and rendered judgment in favor of the defendants, Hab Monsur Corp., (awarding it $132,629.-92) and Mondel, Inc. (awarding it the sum of $113,170.00). The judge also fixed as costs the appraisal fees for those experts testifying in both trials, in addition to two related bills, to be paid by the plaintiff. Plaintiff once again has appealed to this court.
ON MOTION TO DISMISS APPEAL
Subsequent to oral argument on this second appeal, appellees filed a motion to dismiss on the basis that appellant’s brief did not contain a certificate indicating that a copy thereof had been delivered or mailed to counsel for appellees as required by Rule IX of the Uniform Rules of the Courts of Appeal. We find this to be the fact, however, it is evident appellant did not intend to abandon these appeals, and the lack of a certificate appended to its brief was merely an inadvertency. We therefore'deny appellee’s motion to dismiss these appeals.
ON THE MERITS
The only issue presented on this appeal is whether the awards made to defendants for the land taken and as severance damages was excessive.
The strip of property expropriated by plaintiff from Hab Monsur Corp. was rectangular in shape and consisted of about 3.12 acres, being a portion of a larger tract of land owned by the defendant. The property taken was approximately 130 feet deep, and fronted on Louisiana Highway 1 about 1066 feet. It was to be used by plaintiff to widen and improve Highway 1, and to convert it into a concrete, four-lane, divided highway. Immediately to the rear of the strip taken was a mobile home park.
At the first trial the following three appraisers testified on behalf of defendant-Hab Monsur Corp.
Robert A. Wolf valued the land taken at $133,337.50 with severance damages placed at $12,900.00, or a total of $146,237.50.
Donald L. Chambers valued the land taken at $125,976.34 with severance damages of $6,653.58, or a total of $132,629.92.
Habeeb Monsur, principal officer for defendant-Hab Monsur Corp., himself testified as appraiser valuing the land at $160,029.00 with $13,307.00 as severance damages, totalling $173,336.00
*670 The aforementioned three appraisers considered the highest and best use of the land taken as commercial and used the so-called “front land-rear land” method for evaluating the property, i. e. where the front portion of a tract taken has a higher value than the rear portion not taken, the landowner is awarded the higher value for the 'land actually taken rather than an averaged value based on its proportionate portion of the land area of the parent tract. State, Through the Department of Highways v. Hoyt, La., 284 So.2d 763 (1973).
In turn plaintiff’s two appraisers, as per instructions of the Highway Department, used the “unit basis” or “average land” approach in determining the value of the land taken, i. e. the value of the land taken bears the same proportion to the total value of the parent tract as the area taken bears to the total area of that tract. Before the aforementioned instructions were given, the record indicates one appraiser, Perry Futrell, determined the Monsur property to be worth $100,503.00 ($92,374.-00 for property taken .and $8,129.00 as severance damages). The other appraiser, Darrell Van Willett, Jr., placed thereon a value of $105,782.00 ($95,091.00 for the property taken and $10,691.00 as severance damages). Subsequently, however, both appraisers certified that the property in question was worth only $15,622.00. Both Futrell and Van Willett, Jr., however, agreed that the highest and best use of the land taken was commercial.
Likewise, the property expropriated by plaintiff from Mondel, Inc. fronted on Louisiana Highway 1. The tracts taken were rectangular in shape and were a part of a larger tract owned by the defendant. A residential subdivision was to the rear of the areas expropriated. One parcel (designated in the record as 15-6) fronted the highway approximately 110 feet by a depth of some 114 feet. The other parcel (designated in the record as 16-2) fronted the highway about 568 feet with an average depth of approximately 114 feet.
Four of the aforementioned appraisers (with the exception of Robert A. Wolf) also placed values on the Mondel property. In addition W. C. Webb testified for the defendant. All five of the appraisers considered the highest and best use of the land as commercial and placed the following appraisals on the respective pieces.
W. C. Webb considered the parcel indicated as 15-6 to be worth $18,700.00 and 16-2 to be worth $109,400.00. Chambers gave a value of $21,120.00 to 15-6 and $94,470.00 to 16-2. Monsur stated in his opinion 15-6 was worth $19,250.00 and 16-2, $101,560.00.
Plaintiff’s appraiser, Perry Futrell, felt 15-6 was worth $7,305.00 and 16-2 $53,-475.00. Van Willett, Jr. considered 15-6’s value to be $8,017.00 and 16-2 to be $65,309.00. As in the case of the Monsur Corporation property, after reporting same to the plaintiff, the highway department asked for alternative appraisals and subsequently a value of $35,261.00 was placed upon both pieces of property.
The trial judge in the original proceedings rejected the appraisals made by plaintiff’s experts based upon the fact that they used the “average land” approach in setting the respective values rather than the “front land-rear land” theory which had been recognized by this circuit and the Louisiana Supreme Court as being the proper approach in a case of this kind. As a result the district judge used Robert Wolf’s appraisal in regard to the value of the Monsur land taken ($133,337.00) and estimated severance damages to be $9,000.-00. In turn he used Habeeb Monsur’s appraisal of the Mondel land taken in respect to parcel 15-6 or $19,250.00. As to parcel 16-2 he determined its value to be $95,200.-00.
Subsequent to the appeal from the abovementioned judgments and our remand back to the district court, a new consolidated trial was held on October 9-12, 1973. In this second proceeding defendants, in effect, offered no new evidence other than *671 to complete the record regarding the former lost testimony.
The plaintiff however brought in another appraiser, Norman Terry, who testified that the Mondel property’s highest and best use was unimproved residential, as was the Monsur property with minor commercial influence on one corner. He also used the “average land” approach placing values of $34,428.00 on the Mondel properties and $15,600.00 on the Monsur property.
Plaintiff also sought by a number of witnesses to show that Habeeb Monsur had knowledge of the impending highway change and was in legal bad faith in trying to change or convert the area into a higher property basis (commercial rather than residential) than it would normally have had. In addition the highway department alleged that defendants’ appraisers used erroneous assumptions upon which they based their property valuations (which both trial courts accepted).
The district judge at the second trial found plaintiff’s aforementioned arguments unconvincing and subsequently rendered judgment in favor of defendants using the lower of the values presented by defendants’ appraisers. In respect to the Mon-sur property, he used the values of appraiser Donald Chambers ($125,976.34 for the land taken and $6,653.58 as severance damages or a total $132,629.92). For the Mondel properties he used W. C. Webb’s lowest appraisal of 15-6 ($18,700.00) and Donald Chambers’ $94,470.00 value for parcel 16-2, totalling $113,170.00.
The question presented is whether the district judge committed error in his conclusions regarding the values of the disputed properties.
All three pieces of property have frontage on the well travelled Louisiana Highway 1. There are large residential areas nearby, as well as England Air Force Base, the main entrance being located adjacent to the Monsur tract. Noticeable also is the absence of nearby competitive commercial locations because of a railroad adjoining Highway 1 across from the subject property. Both of the Mondel parcels are also fronted by the paved Ulster Drive which separate them, creating advantageous corner locations. Parcel 16-2 is also bounded in the rear by the concrete paved Dublin Road. In addition, both sets of properties are apparently well-drained and served by all utilities, including sewage. In fact, it was pointed out that ONLY these properties in the immediate area on Highway 1 were served with a sewage sys-tém, which as testified to is most important in many commercial ventures.
As aforementioned all of the five appraisers, testifying for both the plaintiff and defendants, at the first trial stated that the highest and best use of the properties was commercial. Only Norman Terry, at the second trial, considered the highest and best use to be residential. This testimony was clearly rejected by the second trial judge.
In addition, as pointed out, Terry also appraised the lands using the “average land approach”, just as did Futrell and Van Willett, Jr., in the first trial, after being so instructed by the highway department. The district judges in both the first and second trials disregarded these appraisals giving the reason that the proper approach to be used in this particular situation was the “front land-rear land” concept. In so ruling the trial judges were correct. The jurisprudence of this state is settled to the effect that the front land-rear land rule is the proper rule to be applied in appraising a tract of land being expropriated when it comprises a part of a larger tract which fronts on a public highway. State, Through Department of Highways v. Hoyt, La., 284 So.2d 763 (1973). See also: State, Department of Highways v. Guaranty Realty Corp., 295 So.2d 490 (La.App. 3rd Cir. 1974) ; concurring and dissenting opinion in State, Through Department of Highways v. Hoyt, 272 So.2d 768, 774 (La.App. 3rd Cir. *672 1972) ; State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3rd Cir. 1972) ; State, Department of Highways v. Landry, 171 So.2d 779 (La.App. 3rd Cir. 1965).
Both trial judges further pointed out the fact that plaintiff’s expert realtors were unaccustomed to dealing with the property in the area and used comparable sales which were inferior to the subject property.
This in turn left only the defendants’ realtors who were found to be more experienced and familiar with the properties and area concerned and gave better reasoned appraisals. We find no error on the part of the trial judge in relying upon their testimony rather than that of the plaintiff’s witnesses. See: State, Through Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972); State, Through Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969); State, Through Department of Highways v. Singletary, 185 So.2d 642 (La.App. 1st Cir. 1966).
In addition, the second trial judge used the lowest of the appraisals submitted by the defendants’ experts. This is clearly within the great discretion accorded the trial judge in determining just compensation to be awarded for the property taken. See: State, Department of Highways v. Goudeau, 276 So.2d 923 (La.App. 3rd Cir. 1973).
Finally, we turn to the argument that Monsur was in “bad faith” and tried to change the base value of the land from residential to commercial once he found out about the proposed Louisiana Highway 1 right-of-way extension. As enunciated in State, Department of Highways v. Vermilion Department Co., 258 La. 1159, 249 So.2d 167 (1971) “Whatever ‘bad faith’ is, .” the burden of proving such is on the Department of Highways. As pointed out by the second trial judge, evidence in the record reflects that the particular areas involved herein were planned to be commercial as far back as 1956. We likewise find that the Highway Department failed to sustain its burden in this respect.
For the above and foregoing reasons the judgment of the trial court, on remand, is affirmed at plaintiff-appellant’s costs.
Affirmed.

. Subsequently before the hereafter mentioned ed sum to $35,261.00. second trial the plaintiff amended this deposit-