LOTTINGER, Judge.
This is an expropriation proceeding. The taking was occasioned by and for the *152 purpose of the construction of highway Interstate 10 over property belonging to defendant, Merritt P. Evans, Jr. in Ascension Parish, Louisiana. The Lower Court rendered judgment in favor of defendant, Merritt P. Evans, Jr. and against plaintiff, State of Louisiana through The Department of Highways, in the sum of $154,093.00, subject to a credit in the sum of $52,723.00 previously deposited in the registry of the Court, together with legal interest on the balance from date of judicial demand until paid. The Lower Court also awarded expert witness fees and taxed these as costs, and it assessed all costs against the State of Louisiana, through The Department of Highways. From this judgment, the State of Louisiana, through The Department of Highways, has appealed. Defendant has not appealed or answered this appeal.
The Evans’ property originally comprised 694.809 acres in Ascension Parish, fronting westerly on Louisiana Highway 44 and partially fronting southerly on Louisiana Highway 941. Two tracts comprising a total of 40.171 acres were expropriated leaving north remainders of 242.239 acres and a south remainder of 412.399 acres fronting on Highways 44 and 941. The full sum of $52,723.00 was deposited as the estimate of just compensation for the land and improvements taken. Nothing was deposited for severance damage to the remainders.
Trial was held on May 25 and 26, 1972. Plaintiff presented to appraisers as experts, namely Messrs. Oren Russell and Dan Carlock. Defendants presented two appraisers as experts, namely Messrs. Kermit Williams and Curtis Book. By agreement, decision was withheld pending final determination of the right of the highway department to expropriate a right-of-way from an adjoining land owner to provide access to defendant’s rear remainder in the case of State, Department of Highways vs. Thibaut. This determination was made in favor of the Highway Department and is final, that is, a right-of-way was expropriated over the property of Thibaut a distance of approximately one-eighth of a mile to provide access from Louisiana Highway 941 to defendant’s rear remainder.
Judgment was rendered in the Lower Court on June 4, 1973, the District Court finding:
1. The rear remainder of the subject tract now has access to the nearest public road, but no frontage on a public road.
2. Defendant’s expert, William’s figure of $1,800.00 per acre represented the market value of the 40.171 acres taken for a total value of $72,308.00
3. The remainders were damaged by the taking in the amount of $80,535.-00.
4. The improvements on the property taken had a value of $1,250.00.
Appellant believes that the District Court erred in the finding that the remainders had suffered any severance damage as a result of the taking. Appellant strenuously argues that the District Court should have adopted a “front land — rear land” premise for valuing the property taken. That is, since the property taken was not highway frontage or near Highway 44, appellant argües that it is incorrect to arrive at an average value for the entire tract since in its opinion the acreage actually taken is not as desirable as the property of defendant fronting on and near Highway 44. Its authority for this position is State, Department of Highways v. Hoyt, 284 So.2d 763 (S.Ct.1973) and other cases cited which hold that different parts of the same tract can have different fair market values.
In well reasoned Reasons for Judgment, the Lower Court wrote:
“The Department offered the testimony of two expert real estate appraisers, Mr. Oren Russell who valued the property at $1,450.00 per acre, and Mr. Dan Carlock who valued it at $1,300.00 per *153 acre. The defendant likewise offered the testimony of two experts, Mr. Kermit Williams who valued the subject tract at $1,800.00 per acre, and Mr. Curtis Book who valued it at $2,000.00 per acre.
“Mr. Russell enumerated some thirteen sales which he considered comparable to the subject ranging in price from $1,000.00 to $4,000.00 per acre, but relied primarily upon three sales as follows: (1) John Brown to Albert Crutcher, July 1968, at $1,333.00 per acre; (2) Clarence J. Burns to Robert J. and Phyllis Burns, September 1969, at $1,592.00 per acre; and (3) Claude Waguespack to Heidel Brown, April 1966, at $1,200.00 per acre.
“Mr. Carlock relied primarily upon the three following sales: (1) Eli Gaudin to A-l Equipment Rental, May 1970, at $1,980.00 per acre; (2) Peter Euggenio to Gerald Burtner, March 1970, at $1,641.00 per acre; and (3) Belva Arbisi Drago to Melrose, Inc., August 1969, at $1,928.00 per acre.
“Mr. Williams utilized some eight sales, including the Gaudin to A-l sale at $1,980.00 per acre relied upon by Mr. Carlock, as well as four of the sales included in the thirteen enumerated by Mr. Russell. Mr. Book utilized five of the eight sales listed by Mr. Williams, four of the five having been included in Mr. Russell’s list of thirteen, and including specifically the Gaudin to A-l sale which was utilized by all four appraisers although not included by Mr. Russell in his primary three.
“There was therefore substantial agreement among all four appraisers upon some of the sales to be utilized as comparables with the appraisers for the Department favoring sales further back in point of time from the date of the taking here, Feb. 25, 1972, and thus generally indicating a lower value, and with the appraisers for the landowner favoring sales closer to the Town of Gonzales and the highway interchange and thus generally indicating a higher value.
“After considering in detail all of the comparables and considering the analysis offered by each appraiser, the court finds that the figure of $1,800.00 per acre arrived at by Mr. Williams represents the most realistic approximation of market value at the time of the taking. As noted above all four appraisers utilized the Gaudin to A-l sale made in May of 1970 at $1,980.00 per acre. This tract is also located on La. 44 a short distance from the subject. It was inferi- or to subject in that it was not as well cleared or as highly developed, and it was traversed in part by a bayou which severed a portion of the property from the main area. On the other hand it was a smaller tract (only 35 acres) and hence could be expected to command a somewhat higher price per acre.
“In analyzing the three sales relied upon by Mr. Russell the court notes (1) the Waguespack to Brown sale of April 1966 at $1,200.00 per acre represents a sale made nearly six years prior to the taking; (2) the Brown to Crutcher sale of July 1968 at $1,333.00 per acre represents a sale made nearly four years prior to the taking; and (3) the Burns to Burns sale of 1969 represents a family transaction made nearly three years prior to the taking and yet it sold for nearly $1,600.00 per acre. All of these tracts are located in the immediate vicinity of the subject and all likewise fronted on La. 44. When these three sales are arranged in chronological order they clearly indicate a significant steadily increasing value with the passage of time.
“In analyzing the sales relied upon by Mr. Carlock the court notes that the latest sale in point of time was March of 1970, nearly two years prior to the taking, at $1,641.00 per acre. Furthermore, he also utilized the Gaudin to A-l sale discussed above at $1,980.00 per acre; and finally, the Drago to Melrose sale *154 which has a common córner with the subject tract in the rear, at $1,928.00 per acre.
“Admittedly, these tracts were all smaller than the subject and a downward adjustment should be made for the size differential. On the other hand, the date of the taking here was two to three years later in point of time and an upward adjustment should be made for the time factor as well as for the superior developed nature of the subject tract. The court therefore accepts Mr. Williams’ figure of $1,800.00 per acre as being the best approximation of market value as of the date of the taking.”
The record contains ample evidence in support of the conclusions of the trial judge and he had sufficient basis for holding that all of the acreage of defendant should be given equal value. Although the appraiser, Kermit Williams, admits that highway frontage is always more valuable than property to the rear, he maintains that he considered the depth factor of the property taken in reaching his determination of value per acre and in so doing assigned a lower figure in the range of comparables. All of the property was of equal quality, and Mr. Williams believed, except for this taking, could have been sold for development as one tract. The second appraiser for the State, Dan Carlock, made no distinction between front and rear property, but instead valued the property on an average per acre value as did both of defendant’s appraisers. We agree with the holding of the Hoyt decision, but there is no basis for such a distinction in the factual situation before us.
On the question of severance damages, both appraisers for the State contended there was no severance damage since access was provided defendant from Louisiana Highway 941 to the rear remainder over the Thibaut property. This assertion is based upon the premise that the highest and best use of the tract is for pasture, and that as long as access is provided, its value as pasture has not diminished. It is true that after the taking the highest and best use would be for pasture, but that was not necessarily the case at the time of the taking. It is apparent from the evidence that the rear property could have been developed along with the front for commercial or residential purposes. After the taking, the rear 242 acres has no public road frontage and is totally landlocked except for the access provided over the Thi-baut property. The Trial Court followed the testimony of Mr. Kermit Williams in assessing severance damages. In Mr. Williams’ opinion, only the rearmost 20 acres of the south remainder, which remainder fronts on Louisiana Highways 44 and 941, was damaged by the fact that it is now backed up to the Interstate which makes it less desirable for development. He estimated this damage at 40 percent of the $1,800.00 per acre valuation for a total of $14,400.00. He testified that the 40 acres backed up to the Interstate on the north or rear remainder was also damaged to the extent of 40 percent for a total of $28,800.-00. The remaining acreage of the northern or rear remainder was damaged 10 percent. By stipulation of the parties this rear remainder contained a total of 242.239 acres. After subtracting the 40 acres damaged in the amount of 40 percent, this left a balance of 202.239 acres. The Lower Court, using Mr. Williams’ acreage figures, erroneously figured this at 207.43 acres, and computed the severance damages at $37,337.40 and rounded to $37,335.00, whereas the severance damages on 202.239 acres should be $36,403.00. Therefore, the severance damages will be amended to lower them $932.00 for total severance damages of $79,603.00.
Plaintiff-appellant makes two primary arguments concerning the severance damages awarded by the Lower Court. First, it argues that the method used by Kermit Williams in arriving at severance damages, that it is a percentage method of diminution in value, was not *155 based upon any actual evidence of market value. Plaintiff-appellant says that Williams’ testimony must be considered only as an individual and unsupported expression of opinion. Mr. Williams testified on cross examination that he studied comparable sales for his after evaluation though he did not include these in his written appraisal or testimony. Inasmuch as he arrived at his opinion as to fair market value of the acreage by using comparables and studied comparable sales before reaching his after evaluation percentages of diminution in value, by reason of the fact that he was accepted by the Court as an expert in the field of real estate appraisals, his expert opinion of the diminution in value is reliable evidence. Secondly, appellant argues that the rear remainder is not less useful now than it was before the taking. Appellant argues that there was no need for the State to expropriate a right-of-way to the property of defendant if the court is going to find that the acreage nevertheless suffered severance damage. While it is true that the remainder has access over the right-of-way expropriated from the Thi-baut tract, the fact remains that prior to the taking it was directly connected to the south remainder which had considerable frontage on two state highways. The expert witnesses for the defendant believed that this rear acreage could have been developed for commercial and residential purposes along with the south remainder had the interstate not severed the two. All of the expert witnesses agreed that after the taking the best use of the rear remainder is for pasture. We believe this to be ample basis for the Trial Court reaching the decision it reached.
For the above and foregoing reasons, the judgment appealed from is amended to reduce the total award of $154,093.00 by $932.-00 to $153,161.00, subject to a credit for the sum deposited in the registry of the court and so recognized by the Lower Court, and as thus amended, it is affirmed at plaintiff-appellant’s costs, as permitted by law.
Amended and affirmed.