307 So.2d 304 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
DENHAM SPRINGS DEVELOPMENT CO., INC.
No. 54975.
Supreme Court of Louisiana.
January 20, 1975.
Rehearings Denied February 21, 1975.
*305 Darrell D. White, White & May, Baton Rouge, for defendant-applicant.
D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Baton Rouge, for plaintiff-respondent.
MARCUS, Justice.
A portion of a shopping center, .521 acres, belonging to Denham Springs Development Co., Inc. was expropriated by the Department of Highways under La.R.S. 48:441 et seq. The Highway Department deposited in the registry of the court $35,936.00 as the estimate of just and adequate compensation for the land and improvements taken, plus $1,700.00 as severance damages. At trial, the value of the land and improvements taken was stipulated to be $35,936.00, leaving damages to the remainder as the only issue to be decided. The trial court fixed these damages at $64,220.97 and rendered judgment accordingly. The court of appeal reduced this award to the sum of $1,700.00.[1] Upon complaint of defendant concerning the reduction in severance damages awarded by the trial court, we granted certiorari.
The original tract of ground was approximately rectangular in shape and contained 5.193 acres (or 226,211 square feet) of ground. It was bounded on the west by South Range Avenue, on the north by Rodeo Street and on the east by Eugene Street. U. S. Highway 190 cut across the northwest corner of the tract at the intersection of Rodeo and South Range Avenue. The property had a frontage of 55.34 feet on the highway. The parcel taken was a strip of land along the entire west side of the property approximately 40 feet in width, containing .521 acres, or 22,698.8 square feet. The purpose of the expropriation was the widening of South Range Avenue from a two-lane to a four-lane thoroughfare, running from Highway 190 to Interstate 12.
Before and after the taking, the property was used as a shopping center. It is located in the heart of the City of Denham Springs, Livingston Parish. Located in the shopping center at the time of trial was a building leased to Food Town, Inc. containing 24,500 square feet and another building leased to T. G. & Y. containing 40,000 square feet,[2] or a total of 64,500 square feet. Both buildings face South Range Avenue. In front of these buildings was an asphalt surfaced parking lot containing 265 parking spaces. A little over an acre of land immediately to the south of the shopping center buildings was undeveloped.[3] The taking included an area providing 42 parking spaces, leaving spaces for 223 automobiles. It was conceded that the subject property was located at the best commercial corner in Denham Springs.
*306 The Highway Department offered the testimony of two experts, Carl Snyder and Don Carlock, in support of its position that the remainder suffered no severance damages. Defendant introduced the testimony of its experts, Kermit A. Williams and W. D. McCants, Jr. Williams estimated the severance damages in the sum of $65,315.00, and McCants found the property suffered $89,480.00 in damages.
Defendant primarily contends the remainder of the shopping center property was damaged due to the loss of potential for future development as a result of the decrease in parking area. The theory of defendant's claim is that a three-to-one ratio is required in order to attract a prime lessee, i. e., three square feet of parking area must be provided for every one square foot of building area. Since the taking of 42 parking spaces restricted future expansion because of this parking requirement, severance damages are due to the remainder.
Snyder and Carlock, experts for the Highway Department, felt that the parking spaces remaining were more than adequate to serve the shopping center. Their opinion was based upon the zoning ordinance of the City of Denham Springs requiring one parking space for every 500 square feet of sales and service area. The 64,500 square feet now utilized for business, under this ratio, would require a minimum of 129 spaces for parking. Since 223 spaces remain, the parking was considered adequate. Both witnesses were steadfast in their assertion that the area to the south, then undeveloped, could be used in the future development of the shopping center without any damages being occasioned because of the reduction in parking area.
On the other hand, Kermit Williams estimated the value of land and improvements before the taking at $684,549.00. After deducting the value of the property taken, he arrived at the value of the remainder. He then concluded that the remainder suffered a diminution in value of 10%, or $65,313.00. His opinion is based upon the fact that the taking constitutes 10% of the entire land area, or 16% of the existing parking area. He further testified that, if the portion taken is calculated against the remaining parking area, it would be 18.8% of that area.[4] It was his opinion that major tenants prefer a four-to-one parking ratio and that the trend is in the direction of more parking area. He concluded that the primary damage to the remaining property is the restriction of future expansion because of insufficient parking area to meet the parking requirements of major tenants.
W. D. McCants, Jr. testified that the severance damages amounted to the sum of $89,480.00. His opinion is based on the requirement of a three-to-one parking ratio for the leasing of shopping centers. The instant taking of 22,698.8 square feet of the parking area resulted in reduction of the building potential of the remainder. Before the taking, the remaining building potential was 8,322 square feet. After the taking, a building containing only 2,648 square feet could be constructed and, at the same time, maintain this parking ratio. According to McCants, the least a lessor would now rent such a building for is $2.00 per square foot per year for ten years. Thus, McCants calculated defendant would have received $113,480.00 from the 5,674 square feet of building potential lost. Only $24,000.00 would now be received from the development of the remaining area (2,648 square feet). Accordingly, he estimated severance damages as the difference, or $89,480.00.
After hearing the experts testify, the trial judge concluded he was unable to accept the position of plaintiff's experts that the remainder suffered no severance damages. He found impressive the reasoning of McCants that, because of the taking, defendant was deprived of the full development *307 of its shopping center and thus suffered damages. However, he reduced the estimate of McCants ($89,480.00) to its present day value. As thus reduced ($64,220.97), the estimate was approximately the same as that of Williams' estimate of $65,315.00. Hence the award of $64,220.97, less credit for the $1,700.00 previously placed in the registry of the court, was fixed as severance damages.
The court of appeal rejected McCants' testimony as based entirely on speculative factors, and likewise declined to apply the estimate of Williams for his failure to arrive at an "after" value for the remainder. The award was reduced to the sum deposited ($1,700.00).
Severance damages are ordinarily calculated as the difference between the market value of the remaining property immediately before and immediately after the taking. State, through Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973). The burden of proving alleged severance damages to the remainder of property involved in an expropriation proceeding rests upon the owner who must establish such damages with legal certainty by a preponderance of evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961); Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260 (1956); Central Louisiana Electric Company v. Dunbar, 183 So.2d 111 (La.App.1966). The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severancedamage loss, especially where accepted by the trier of fact. Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974); State, Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973); State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972); State, Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). Appropriately, we stated in the Churchill Farms case that there is no artificial formula by which alone such damages must be proved.
Proof was adduced at trial that this property belonging to defendant was considered prime location for shopping center purposes. It is uncontradicted that its use, both before and after, was for such purpose. After the erection of the Food Town building, expansion continued by the leasing in 1967 to T. G. & Y. Pursuant to this lease, a building was constructed. Although not on the property at the time of the taking on June 16, 1969, the aerial photograph introduced at the time of trial in 1972 (P-7) shows this T. G. & Y. building. McCants testified to further development by consideration of the leasing of 8,322 square feet of this property by a national concern (Shainberg). This lease was not confected because a 10,000 square foot area was sought by that company. However, an unsuccessful effort was made to acquire property to the south in order to secure the additional area. Williams also testified that the original plans of the owner to build another building south of the present two buildings had been curtailed as a result of the taking. This is evidence that, conformably with the past construction and leasing, defendant expected to continue expansion of the remaining 8,322 square feet of this shopping center. Furthermore, we are satisfied from the evidence that a major lessee would require a three-to-one ratio of parking area to selling and service space, the City of Denham Springs ordinance requirement to the contrary. It should be noted that even one of the experts for the Highway Department admitted that this ratio was being used in commercial leasing of shopping centers.
After careful review of the record, we are convinced that defendant has adequately proven serverance damages by a preponderance of the evidence. Defendant, by this taking, was deprived of the full potential of future development of this shopping center due to the loss of parking area. Defendant is entitled to recover for this damage to the remainder. Accordingly, we conclude that the trial judge was correct in the award of severance damages, *308 and the court of appeal erred in reducing this amount.
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I cannot join in the majority's award of what I consider to be entirely speculative severance damages. I can find no real support in the record for that part of the award based on the potential value of buildings and parking spaces not yet in existence. Further, there is no testimony whatsoever that satisfies me that the construction of these speculated buildings and parking spaces was ever even contemplated. The expert opinion testimony relied upon by the majority is not supported by facts and therefore should have no weight.
In my opinion, the decision of the court of appeal, 294 So.2d 281 (La.App.1st Cir. 1974) should have been affirmed, and I adopt the reasoning of that decision for my dissent:
"It is an established principle that severance damage is the difference between the market value of the remainder immediately before and immediately after the taking. State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969); State, through Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973). Generally, the market data approach is regarded as being the soundest method of making this determination. Losses of rents or other revenues, or the cost to cure various physical damages caused by the taking may be relevant only as they may indicate a dimunition in value of the remainder, but can form the basis of an award only in unusual cases. State, Department of Highways v. Mason, supra.

"Therefore, Mr. McCants' testimony, which is based entirely on speculative factors, should not have been considered by the trial judge.
"As to the other appraisers, we note that Mr. Willimas failed to arrive at an `after' value for the remainder, preferring to rely on his own expertise in estimating a percentage of loss in value. The testimony of the two experts for the State is more in accordance with accepted appraisal practices, and, we believe, based on sounder reasons." (Id. 294 So.2d at 283).
The burden of proving alleged severance damages is upon the owner, who must establish the damages with legal certainty and by a preponderance of the evidence. State, Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961). In my opinion, that burden was not met by the plaintiff in this case.
For the reasons assigned above, I respectfully dissent.
NOTES
[1] 294 So.2d 281.
[2] The T. G. & Y. lease is dated July 21, 1967, and the building was constructed after the taking on June 16, 1969, but prior to trial (April 11, 1972).
[3] At the time of trial, 20,150 square feet of this undeveloped area had been surfaced with asphalt to provide 80 parking spaces.
[4] The lease of T. G. & Y. introduced in evidence as proffer (D-1) provided that it could be cancelled if 20% of the parking area was taken by condemnation.