309 So.2d 398 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
NISBET PROPERTIES, INC., et al., Defendants-Appellees.
No. 12547.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1975.
Rehearing Denied April 1, 1975.
*399 D. Ross Banister, William W. Irwin, Jr., Johnie E. Branch, Jr., and Jerry F. Davis, by Jerry F. Davis, Baton Rouge, for plaintiff-appellant.
Tucker, Martin, Holder, Jeter & Jackson, by T. Haller Jackson, Jr., Shreveport, for defendants-appellees.
Before BOLIN, HALL and DENNIS, JJ.
En Banc. Rehearing Denied April 1, 1975.
HALL, Judge.
The issue presented by the appeal in this expropriation suit involving a partial taking is whether the defendant owner is entitled to severance damages, and, if so, how much. The district court awarded $22,492 for severance damages and the State appealed. We amend the judgment to reduce the amount awarded from $22,492 to $12,500.
On the date of taking, May 8, 1970, defendant, Nisbet Properties, Inc., was the owner of a 5.008 acre rectangular tract of land fronting on Dee Street in southeast Shreveport near the Shreve City Shopping Center. Located on the tract of land was a specially designed 67,000 square foot masonry building constructed in 1968 by the owner to the specifications of its lessee, South Central Bell Telephone Company, for use as a computer center. The property was under a 15 year lease to South Central Bell, which lease contained an option to purchase, options to renew and provisions relating to expansion of the building. To the rear of the building was a paved lighted parking area containing approximately 237 parking spaces.
The property taken was a triangular portion of one of the rear corners of the parking area containing 0.202 acres and accommodating from 27 to 33 parking spaces, the exact number being in dispute. The project necessitating the expropriation under the "quick-taking statute", LSA-R.S. 48:441-460, was the construction of a new bridge and approaches across Red River, paralleling the existing Shreveport-Barksdale Bridge. After completion of construction, the rear corner of defendant's remaining property will front on an interchange road handling traffic between the Shreveport-Barksdale Highway and the Red River Parkway also under construction.
After the taking and prior to trial, defendant acquired another tract of land adjoining the rear of its property containing 0.339 acres, on which it constructed a parking area containing 44 parking spaces, at a total cost (land and construction) of $44,037. Of this cost, South Central Bell paid $5,847 to the defendant, being a negotiated figure agreed on between the lessor and lessee as covering the cost of constructing additional parking spaces over and above the number of spaces contained in the tract taken.
After trial of the suit in 1973, judgment was rendered awarding defendant $15,698 as the value of the property taken and $22,492 as severance damages to the remainder, less a credit of $14,590 deposited originally by the State. The State appealed.
On appeal, the State makes no complaint about the amount awarded as the value of the property taken. It takes serious issue, however, with the award for severance damages to the remaining property, claiming the award is erroneously and inappropriately based on "cost to cure", is speculative, and is not supported by sufficient evidence to sustain defendant's burden of proof.
*400 Two expert real estate appraisers testified at the trialRoy J. Fulco for the State and Thomas B. Dupree, Jr., for the landowner. Both used the market data approach (comparable sales) plus cost of improvements in evaluating the property taken. Their opinions of value were not far apart ($14,590 versus $15,698) and the trial judge accepted the higher figure of defendant's appraiser.
On the issue of severance damages, Fulco was of the opinion there were none. His opinion was that the value of the remaining property was the same after the taking as before. Based on a study of usage of the parking area, he felt the parking was still adequate after the taking. If additional parking was needed, it could be provided by paving existing open areas on the side of the building. He further was of the opinion that any severance damage was more than offset by special benefit to the property from the additional frontage on the interchange road constructed at the rear of the property.
Dupree was of the opinion the remaining property was damaged to the extent of $22,492, the amount awarded by the district court. He was of the opinion the market value of the remaining property was decreased after the taking, as of the date of the trial, in an amount equal to the actual cost to the owner of replacing the parking spaces lost by virtue of the taking. His view was that the loss of parking spaces created a problem and diminished the value of the remaining property in that the number of spaces available before the taking was already less than the number required by the zoning ordinance and a reduced parking area would inhibit expansion. He was of the opinion a potential buyer or investor would be aware of the problem, would realize the necessity and importance of replacing the parking spaces, and would reduce the price he would be willing to pay by the amount it would cost to replace the parking.
Dupree arrived at the actual cost to the owner of replacing the parking spaces in the following manner. The actual cost of acquisition of the additional 0.339 acres and cost of improving the area to provide 44 parking spaces was $44,037. From this figure he subtracted $5,847 paid by South Central Bell to the owner as the cost of the 11 additional spaces over and above the 33 taken. He then subtracted the $15,698 paid for the tract taken, leaving $22,492 as the net cost to the owner, which he translated into the decrease in value of the remaining property after the taking. This amount was awarded by the trial court as severance damages.
The State argues that the award in this case is based on a "cost to cure" approach which has been disapproved by the Louisiana Supreme Court in State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969) and Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (1970).
While both cases express disapproval of cost to cure as a primary approach to measuring damages, neither case prohibits the use of this approach in cases where other methods such as market data are not available or are impractical and where the approach is used as a tool in determining before and after market value.
As noted by the court in State, Department of Highways v. Crow, 286 So.2d 353 (La.1973):
"All of the tools of evaluation, including the determination of highest and best use, the study of comparables, cost of structure and depreciation studies, and income analysis, are only means to fixing just and adequate compensation. No one of these tools is an end in itself."
More recently in State, Department of Highways v. Terrace Land Co., Inc., 298 So.2d 859 (La.1974), the Supreme Court discussed the basic task of the courts in fixing just compensation as mandated by the Constitution and the use of various formulas as follows:
"The basic purpose in all cases is to determine the just and adequate compensation *401 required by our constitution. Whatever approach or formula of valuation used, it should take into consideration `all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken [Many citations omitted.]' State Through Dept. of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21.
"The specific formulas of valuation developed by the courts are all designed to assure that the condemnee receives just and adequate compensation. These formulas are all means to this end; there is no artificial formula by which alone such compensation may be determined. Specific formulas of valuation such as willing buyer-willing seller, per-acre or per-lot, front-foot or average-value, income-capitalization, replacement-cost, or othershould be used to effectuate this end, not to defeat it. State, Department of Highways v. Crow, 286 So.2d 353 (La. 1973); State, Department of Highways v. Blair, 285 So.2d 212 (La.1973); State, Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973)."
In State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975), substantial severance damages were awarded for the partial taking of a .521 acre tract containing 42 parking spaces from a 5.193 acre tract used as a shopping center. The court held:
"... The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance-damage loss, especially where accepted by the trier of fact. Louisiana Power & Light Co. v. Churchill Farms, Inc., 292 So.2d 183 (La.1974); State, Department of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Department of Highways v. Garrick, 260 La. 340, 256 So.2d 111 (1972); State, Department of Highways v. DeRouen, 256 La. 947, 240 So.2d 717 (1970). Appropriately, we stated in the Churchill Farms case that there is no artificial formula by which alone such damages must be proved."
Severance damages are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Department of Highways v. Denham Springs Development Co., Inc., supra; State, Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973). Such damages are determined as of the date of trial. The burden of proving such damages is on the landowner. The expropriating authority may offset against severance damages any special benefits accruing to the remainder of the property. The authority has the burden of proving these special benefits. State, Department of Highways v. Trippeer Realty Corp., 276 So.2d 315 (La.1973).
It seems clear to us that there was some decrease in the value of the remaining property after the taking. Surely, the reduction in already limited parking spaces would adversely affect the value. The opinion of defendant's expert that the value of the property, one economic unit, was decreased by more than the value of the property taken is reasonable and convincing.
This property was developed as one integrated economic unit for a specific use and lessee. Its value for this highest and best use necessarily relates to continuing the economic unit intact. Adequate parking and a potential for expansion are integral parts of the package. Reduction or limitation of these features necessarily adversely affected the value of the remaining propertyadversely affected what an investor would pay for the property.
That there is damage seems evident and the amount of damages must be measured by the available evidence and tools. The judgment of the expert witnesses based on their experience and expertise is *402 helpful. While market data and income information is helpful in estimating value of the defendant's property as a whole, before the taking, such information is not available to measure the damage or value after the taking. Cost to cure and replacement cost are not of themselves precise mathematical measures of damages, but they are useful evidence and tools in arriving at a proper award. In this case, considering the nature of the particular property and the impact of the partial taking, it seems reasonable to closely equate the before and after value of the remaining property to the cost to cure or replacement cost of the parking situation.
We find some fault, however, in the calculations made by defendant's appraiser. The actual cost of acquiring and improving the new parking area, which was larger than the area taken, was $44,037. The appraiser subtracted $5,847 paid by South Central Bell as a negotiated figure purporting to represent the cost of the additional parking provided, leaving a replacement cost of $38,190 before deducting the amount paid for the tract taken. Although the figure paid by South Central Bell was agreed on by the lessor and lessee as between themselves, it is not realistic as the actual cost attributable to the additional parking area.
The newly acquired property contains 0.339 acres. The property taken contained 0.202 acres, or 59.5% of the new area. Using the 59.5% figure, the cost attributable to replacing the lost parking is $26,202. Another method of calculating the cost is on the basis of number of parking spaces. The new area cost $44,037 for 44 spaces, or approximately $1,000 per space. Our view of the evidence (the appraisers' testimony, plats and aerial photographs) is that there were approximately 29 spaces in the property taken, which would mean that $29,000 of the cost of the new area is attributable to replacement of parking. Subtracting the $15,698 paid for the tract taken from the cost arrived at by these two methods of calculation gives a net cost of $10,504 or $13,302, respectively, as compared to the $22,492 arrived at by defendant's appraiser and awarded by the trial court.
The severance damages cannot be measured with mathematical precision. Considering all of the evidence, it is our judgment that the sum of $12,500 will adequately compensate defendant for the damage to or reduction in value of its remaining property. This is $9,992 less than the $22,492 awarded by the trial court for severance damages and the total amount of the judgment should be reduced accordingly.
On appeal, the State does not seriously urge there should be an offset against severance damages for special benefits. The evidence does not support a finding of any special benefit to the subject property by reason of the additional frontage on the interchange road.
For the reasons assigned, the judgment of the district court is amended to reduce the principal amount thereof by $9,992 from $38,190 to $28,198 and, as amended, is affirmed at appellant's costs.
Amended, and as amended, affirmed.