346 So.2d 842 (1977)
STATE of Louisiana THROUGH the DEPARTMENT OF HIGHWAYS
v.
A. WILBERT'S SONS LUMBER AND SHINGLE COMPANY et al.
Nos. 11295, 11296.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearings Denied June 13, 1977.
*843 Johnie E. Branch, Jr., Executive Asst. Gen. Counsel, Jerry F. Davis, Asst. Gen. Counsel, Hwy. Dept., and Charles A. O'Brien, III, Asst. Gen. Counsel, Hwy. Dept., Baton Rouge, for plaintiff.
David M. Ellison, Jr., Baton Rouge, for defendant H. B. Fairchild.
Paul G. Borron, Jr., Plaquemine, David M. Ellison, Jr., Baton Rouge, for defendant A. Wilbert's Sons Lumber and Shingle Co.
Before ELLIS, CHIASSON and PONDER, JJ.
PONDER, Judge.
These consolidated cases, arising under the "Quick Taking" Statute, were against the property owner and the lessee of part of the property. All parties appealed.
The issues are:
1. The propriety and quantum of severance damages;
2. The propriety and quantum of damages to the lessee;
3. The amount of fees for the expert witnesses.
We amend and affirm.
A. Wilbert's Sons Lumber and Shingle Company owns a large tract of land in West Baton Rouge Parish, which is bisected by Choctaw Bayou, a navigable stream running roughly north to south. The central part of the land, quite low, is also traversed by a number of sloughs running roughly from northwest to southeast. An elevated all weather road built on an old tramway runs east to west across the land. However, because there is no bridge across Choctaw Bayou, to get from one side of the stream to the other it is necessary to come back to the access to the tramway, go around by public roads, reenter the property from that direction and then proceed to the bank of Choctaw Bayou on the other *844 side. Access from the western side is across property belonging to Florence Ranch. It is also necessary to traverse a totally enclosed piece of property belonging to others, the so-called Sotan property. Prior to the expropriation, access to much of the property was by proceeding on the tramway to the appropriate place and then going southeast along the crest or ridge between the sloughs. The property expropriated was parallel to and several hundred feet south of the tramway.
At the beginning of the trial, the parties stipulated the market value of the land taken was $112,256.50 and the value of the improvements of the property leased to H. B. Fairchild was $5,226.06. During the course of the trial, $500.00 in fencing was added. After trial the court awarded Wilbert an additional $154,475.00 for net severance damages, and Fairchild an additional $10,000.00 for increased costs of transportation and for loss of winter grazing.

SEVERANCE DAMAGES
Wilbert's experts testified that the special benefits resulting from the building of an access road to that part east of Choctaw Bayou more than equalled the severance damages. The special benefits to the part west of Choctaw Bayou, also resulting from the building of an access road, amounted to $42,750.00. A tract of 4025 acres, however, was damaged an average of $70.00 per acre because the expropriation cut off access from the tram road. The court, after making some adjustments, awarded $49.00 per acre.
The Department first contends that since Wilbert had to cross Florence Ranch and since Wilbert had no written agreement with Florence at the time of the expropriation, legal access to the area purportedly damaged was unavailable to Wilbert for transfer to a willing buyer at the time. A "Servitude Declaration and Agreement," in which the owners of Florence Ranch acknowledged Wilbert's right to use the tram road and documents from Gulf States Utilities, owner in fee of the tram road across the Sotan property, it contends, would have no effect because executed long after the taking.
We are concerned only with the values before and after the taking. State, Department of Highways v. Hoyt, La., 284 So.2d 763 (1973). The lower court decided the absence of a written agreement would not have resulted in a lowering by a "willing buyer" of the price after the expropriation. We cannot say he manifestly erred.
The Department contends that no severance damages should be allowed to that part to which access could be had only by trespassing on Sotan property or by building bridges across the sloughs. The trial court rejected this contention but did make adjustment to the average amount of damage per acre. We agree with the conclusion that access was already limited before the expropriation, which resulted therefore in a worsening but was not the sole cause of the denial of access. Wilbert's contention that LSA-C.C. Art. 699[1] would give them access to the tram way across Sotan property would not, even if true, make an adjustment invalid. The necessity of securing an agreement or of litigation with Sotan would, it is reasonable to believe, affect the market price of the land.
The Department next contends that the excess of special benefits to the tract east of Choctaw Bayou should be applied to the reduction of severance damages to the tract west of the bayou. Wilbert contended, and the trial court agreed, that unbridged *845 Choctaw Bayou prevented the unified use in fact, required by State, Department of Highways v. Cefalu, La., 288 So.2d 332 (1974). We agree with that conclusion.
The Department contends that the trial court erred in awarding severance damages as a percentage factor rather than a rate per acre. We believe that the percentage factor was used in calculations as interchangeable with the damage per acre factor. At any rate, the use of percentages is not prohibited. See State, Department of Highways v. Denham Springs Development Co., Inc., La., 307 So.2d 304 (1975).
Wilbert contends that the lower court erred in reducing the severance damages from $70 per acre as testified to by their experts, to $49 per acre, or from twenty per cent to fourteen per cent. They cite cases that the testimony of the experts of the defendant has to be accepted in the absence of testimony of another figure. We believe that the law is more appropriately stated that the testimony of experts is an aid to the court and is not binding. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). The court adjusted the figure for decrease in acreage damaged as testified to by Wilbert's witness and for the absence of a written agreement with Sotan. Considering the facts that the area more easily reached through the Sotan property is approximately 50% of the property damaged and that the damage caused by the expropriation as compared to the unavailability because of the location of the Sotan property was not gauged by any of the experts, we cannot say that the trial court was wrong in making an adjustment of thirty per cent. One of defendant's experts conceded that an adjustment might be appropriate but did not give us a figure.
Wilbert contends that severance damages should be awarded in the amount of $225,000.00, the cost of constructing a road with bridges. The "cost-to-cure" approach should be used in only special circumstances. Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (1970). We agree with the trial court in its refusal to employ this method.

AWARD TO THE LESSEE
The expropriation bisected the leased and cleared land. The lessee unequivocally disclaimed any part of the award made to Wilbert for the land taken. Thus we have no issue as to the economic advantage of the lease. Moreover, the value of the improvements stipulated to be $5226.06, was awarded to the lessee. However, because of the limited access to the highway, it is now necessary to traverse a long circuitous route to go from one part of the leased premises to the other. The lower court awarded Fairchild, the lessee, $2000.00 for this. The Department contests the award.
LSA-C.C. Article 2697 states:
"If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."
This article has been applied to partial takings. The only item he may recover from the expropriator in a case such as this, is the "lease advantage." State, Department of Highways v. Cefalu, 233 So.2d 273 (La.App. 1st Cir. 1970), writ denied 256 La. 373, 236 So.2d 502. See also State, Department of Highways v. Menefee, 266 So.2d 226 (La.App. 2nd Cir. 1972), writ refused 263 La. 109, 267 So.2d 212.
The lessee has cited the cases of Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968) and State, Department of Highways v. Norris, 268 So.2d 300 (La.App. 2nd Cir. 1972) in support of his claim. The first case does have some language, not required for the decision, that could be construed so as to give comfort to lessee. We interpret the words, however, to be not inconsistent with the language in the cases above cited that the lessee must secure any award to be given him from the "lease advantage" or be *846 relegated to a rental reduction or lease termination. The second case quite correctly, we believe, holds that the cost of transportation between the severed parts is an item of severance damages to the owner-lessor, who would find it more difficult to lease the property.
After the expropriation, the contractor for that portion of the highway removed the fences across the right-of-way. Despite requests from the lessee to the Department and from the Department to the contractor, the latter did not fence the northern and southern sidelines of the right-of-way for several years, thus making it impossible to use the leased property for winter pasture, its primary purpose. The lessee claimed damages for this and the court awarded $8,000.00. We agree with the Department that this is clearly a claim in tort and should not be litigated in an expropriation proceeding. LSA-R.S. 48:450-451; State, Department of Highways v. Mouledous, 199 So.2d 185 (La.App. 3rd Cir. 1967), writ denied 250 La. 934, 199 So.2d 927 (1967).
Our decision on the items of cost of transportation and loss of winter pasture make it unnecessary to consider the lessee's contention that the amounts given were inadequate.
The lower court failed to consider the item of damages to fence, stipulated to during the trial. The judgment will be amended to allow $500.00.

EXPERT WITNESS FEES
Defendants claim that the expert witness fees awarded were so inadequate as to constitute an abuse of discretion by the trial judge. Mr. Heidel Brown testified that his fee was $4,200.00; the court awarded $2,950.00. Mr. Kermit Williams testified that his fee was $5,500.00; the court awarded $3,175.00. Mr. Sam Dupree, a Civil Engineer, who testified as to the cost of an alternate road across the south remainder of the property, testified that his fee was $2,812.22. the court awarded $600.00.
In State, Department of Highways v. Hoyt, 272 So.2d 768 (La.App. 3rd Cir. 1972), amended on other grounds La., 284 So.2d 763 (1973), the court said:
"An agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or even the actual payment of such a fee to the expert, is no criterion to be used by the court in fixing expert fees. The trial court has a wide discretion in fixing such fees, and we will not disturb his decisions unless it appears that he has clearly abused that discretion."
We do not believe an abuse of discretion has been shown.
For the above reasons, the judgment rendered in these consolidated cases is amended as to lessee Fairchild to reduce the award from $15,226.06 to $5,726.06. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Art. 699. "The owner whose estate is enclosed, and who has no way to a public road, a railroad, a tramroad or a water course may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, tramroad or water course and shall have the right to construct a road, railroad or tramway according to circumstances and as the exigencies of the case may acquire [require], over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road, railroad, tramroad or water course, or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion." (As it read prior to amendment by Act 672 of 1970).