315 So.2d 151 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
ROSS CONTINENTAL MOTOR LODGE, INC., Defendant-Appellee.
No. 4958.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
Rehearing Denied July 24, 1975.
Writ Granted October 13, 1975.
*153 Johnie E. Branch, Jr., La. Dept. of Highways, Baton Rouge, for plaintiff-appellant.
Jackson & Smith by S. Chris Smith, III, Leesville, for defendant-appellee.
Before HOOD, MILLER and WATSON, JJ.
HOOD, Judge.
This is an expropriation suit instituted under LSA-R.S. 48:441 et seq., by the State of Louisiana, through the Department of Highways, against Ross Continental Motor Lodge, Inc. Plaintiff deposited $5,097.00 in the Registry of the Court, and defendant answered praying that a larger sum be awarded. The trial court rendered judgment awarding defendant $36,088.95, less the amount deposited, for the property taken and damages. Plaintiff appealed. Defendant answered the appeal praying that the amount of the award be increased.
The issues presented are (1) whether defendant suffered severance damages as a result of the taking, and if so, whether the award of $20,800.00 as such damages is excessive or inadequate, (2) whether the award of $10,901.70 for the value of a commercial sign and the expense of removing it is excessive, and (3) whether the fees allowed defendant's expert witnesses are excessive.
This suit was filed and the order of expropriation was signed on August 13, 1970. Defendant at that time owned a lot of land in Leesville, Vernon Parish, located on the west side of and adjacent to U.S. Highway 171. The lot had a frontage of 300 feet on that highway by a depth of 400 feet. Defendant owned and operated a motor lodge or motel on that property. By this proceeding plaintiff has expropriated the east five feet of the above tract of land, that is, a strip 300 feet long by a depth of five feet, being the entire frontage of that lot on U.S. Highway 171. The property taken was used in widening and improving that highway.
The trial judge itemized the award made to defendant as follows:

Value of the land $ 1,500.00
Curb 220 sq. ft. at $2.50 550.00
Concrete 1,275 ft. at $.75 947.25
Sign 10,500.00
Cost of removing sign 401.70
Electric wiring in ¾" conduct 250.00
8" sewer trap installed 1,000.00
Shrubs:
8 Dwarf Holley at $15.00 each 120.00
8 Dwarf Roses at $2.50 each 20.00
Severance Damage 20,800.00
 __________
 $36,088.95

The judgment fixed the fees of the two expert witnesses called by defendant at $3,107.03 and $3,365.61, respectively, and assessed those fees as costs. It condemned plaintiff to pay all costs of the suit.
On this appeal plaintiff questions only the award made to defendant for severance damage, the award for the value of and the cost of removing the sign, and the amounts allowed as fees of defendant's experts.

Severance Damages
The motor lodge located on the parent tract contained 70 guest rooms, a swimming pool, a cocktail lounge, restaurant, meeting rooms and banquet facilities. Prior to the taking there were parking places for 99 automobiles on the property for the use of guests and employees of the motor lodge. Most of these parking spaces *154 were located along the north and south sides of the property, near the entrances to guest rooms, but some parking spaces were located in the front of the building, that is, between the front of the motel and Highway 171.
A concrete walk, about eight feet wide, ran along the front or east side of the building, parallel to the highway, and a concrete curb was located on or along the east edge of the property, at about the right-of-way line of the highway. Prior to the taking the width of the space between the above sidewalk and the curb on the highway right-of-way line was approximately 65 feet. As a result of the taking the width of that space was reduced to about 60 feet. By actual measurement, the distance between the east edge of the sidewalk and the right-of-way of the highway after the taking ranged from 59.91 to 60.25 feet. A part of that space was occupied by the covered entrance to the motel and by a large electric sign, but the balance of it was used as parking spaces for vehicles of guests and employees of the motor lodge and as a means for vehicles to get to and from that establishment.
The parking area in front of the motel was marked and controlled so that ordinarily two rows of automobiles parked in that area. The cars in one row parked side by side, adjacent and perpendicular to the sidewalk, facing west toward the motel, with the front bumpers of those vehicles extending over the edge of the sidewalk. The automobiles in the second row parked adjacent and at right angles to the curb on the east line of the parent tract, facing east toward the highway, with the front bumpers of those vehicles extending over the curb line. Prior to the taking there were spaces for 12 automobiles to be parked "straight in" on the second or last mentioned parking row. The parties agree that before the taking there was ample room for other vehicles to be driven or maneuvered between these two rows of parked cars.
Defendant contends that as a result of the taking the parking area between the front of the motel and the highway was reduced to the extent that defendant lost some parking spaces, and that because of the loss of those spaces the value of its remaining property has been reduced and that defendant thus has sustained severance damages.
Two expert appraisers testified in behalf of defendant: Will Holmes, of Lufkin, Texas, and J. D. Jimerson, of Carthage, Texas. Both of these appraisers felt that the reduction in the width of the parking area in front of the motel, from 65 to 60 feet, made it inconvenient and impractical for defendant to continue to have two rows of "straight-in" parked cars there, and that after the taking it would be necessary for cars in the second row (adjacent to the highway) to park parallel to the curg instead of at right angles to it. They determined that only four cars could be parked parallel to the curb adjacent to the highway right-of-way, and that as a result of the taking defendant sustained the loss of eight parking spaces. They computed that that amounted to a loss of 8.1 percent of the original 99 parking spaces which defendant had prior to the taking.
Both of defendant's appraisers expressed the opinion that defendant had sustained severance damages as a result of the taking because of the loss of these parking spaces. Holmes felt that the severance damages amounted to $20,800.00, while Jimerson estimated them at $23,285.79.
Two experts testified for the Highway Department. One, Norman Terry, an appraiser from DeRidder, Louisiana, concluded that defendant sustained no severance damages at all as a result of the taking, except for the amount which would be required to relocate a sign which was partially on the property taken. He felt that no damages were sustained as the result of the alleged loss of parking spaces. The other expert, Loyd J. Rockhold, a civil engineer and construction consultant, testified *155 that the 60-foot wide area remaining between the sidewalk in front of the motel and the right-of-way of the highway after the taking was adequate to permit vehicles to continue to be parked and maneuvered in the same manner as had been done before, and that no parking spaces were lost as a result of the taking.
The trial judge accepted the testimony of defendant's expert Holmes, and he awarded defendant $20,800.00 as severance damages.
The motel on defendant's property was operated separately from the lounge and restaurant, and separate sets of books were kept. Holmes obtained statements of the gross income and expenses of both phases of the business for a period of one year, beginning on June 30, 1969, and ending on June 30, 1970. He explained that he selected that particular one year period, because it ended shortly before this expropriation suit was filed, and he thought it would show the average annual income of the business at the time of the taking. He found that the net income of the motel during that one year period was $67,440.65, and that the net income of the lounge and restaurant during the same period was $40,625.52. He added these figures together, and concluded that the net income from the entire operation was about $108,000.00 during that one year period. By using what he called the "capitalization process," with a capitalization rate of 14 percent and a lifespan of 25 years, he reasoned that the motel had a value of $771,500.00 before the taking.
Holmes then determined that the highest occupancy rates of the motel were during the months of February, June, July and August, and he concluded that it was only during those four months of each year that the reduction in the number of parking spaces would affect the income of that business establishment. He reasoned that the net income from all phases of the business during those four months should have been $35,964.00, or about one-third the average annual income, and he concluded that because of the loss of 8.1 percent of the parking spaces for the motor lodge, defendant would sustain a loss of 8.1 percent of its earnings from all phases of that enterprise during four months of each year after the taking, amounting to a loss of $2,913.08 per year thereafter. He found, therefore, that because of the loss of 8.1 percent of the parking facilities, the net income of the motel thereafter would be only about $105,100.00 per year. Using the same "capitalization process," he reasoned that the value of the motel property after the taking was only $750,700.00, or $20,800.00 less than its value before the taking.
Jimerson, the other appraiser who testified for defendant, used the same process of reasoning in determining that defendant sustained severance damages because of the loss of those spaces. He obtained different figures as the net income of the business for the year prior to the taking, however, with the result that his estimate of severance damages was different from that of Holmes.
We are unable to agree with the conclusions reached by defendant's appraisers and by the trial judge as to severance damages. In the first place, the evidence shows that the taking of five feet from the front of the motel property did not cause the loss of a single parking space. The trial was held on March 8 and 9, 1972, more then 18 months after the taking. The construction of the highway had not been completed by that time, but the Highway Department nevertheless had taken the full five feet which it had expropriated, and defendant had been operating its motel for several months after five feet of the parking area in front of that establishment had been taken. Yet, defendant had continued to maintain two rows of "straight-in" parked cars between the motel and the highway, exactly as it had done before. The sixty foot depth of the parking area in front of the motel appears *156 to be at least as great, if not greater, than the depth of either of the two parking areas located on the north and south sides of the motel, in each of which areas two rows of straight-in parked cars are maintained.
Holmes conceded that the vehicles have continued to park in two rows in front of the motel, exactly as they did before the taking, and that defendant thus has not lost any parking spaces. His testimony, in part, is as follows:
"Q: Will you admit that up until yesterday at the time Mr. Jimmerson took the photograph cars parked at the subject property in the way they always did?
"A: Yes, sir, they were parked perpendicular.
"Q: In other words, the change that you suggest has not been made up until this time?
"A: Not up to this time, no sir."
* * * * * *
"Q: Now people go into the motel by exactly the same route they did before the taking, don't they?
"A: Yes sir.
"Q: And they come out exactly the same route they did before the taking?
"A: Yes sir."
* * * * * *
"Q: Will you agree that up to this time, up to the date of the trial today, they have, in fact, not lost eight parking spaces as by your suggestions?
"A: Yes, I will agree to that.
"Q: And up to this moment they are utilizing all ninety-nine of their parking spaces?
"A: Yes, up to this moment."
Jimerson also admitted that after the taking vehicles have continued to park in front of the motel in the same manner as they did before. He, in fact, took a picture of cars parked in that area the day before the trial started, and that photograph shows that cars were parked there "straight-in," in two rows, just as they had always parked.
We do not question the fact that the taking of five feet off the front of the motel property made it a little less convenient for guests and employees to park and maneuver their cars in that area. The evidence shows, however, that they could and did continue to park and maneuver them after the taking exactly as they did before, and that the taking did not cause the loss of any parking spaces. Defendant's experts based their conclusions that the taking caused severance damages solely on the assumption that eight parking places would be lost. Since no parking places actually were lost, there is no basis for the award of severance damages.
The evidence also shows that from eight to twelve of the 99 available parking spaces were utilized every day by employees of the motel, rather than by guests or customers. There was a part of defendant's parent tract, 300 feet wide and about 125 feet deep, immediately behind the motel, on which there were no improvements except that about one-half of it was shelled "for truck parking." No satisfactory explanation was given as to why the employees could not be required to park in that area instead of in the parking spaces which defendant's experts felt were so badly needed for other purposes. We realize that it might have been inconvenient for the employees to park in the rear instead of in front of the motel, but severance damages cannot be allowed for mere inconvenience, and such a requirement would have avoided a reduction in income resulting from this expropriation, even if we assume that the taking resulted in the loss of eight parking spaces.
Both of defendant's experts conceded that their projections of a loss of income after the taking, and their conclusions that *157 defendant would sustain severance damages, were based on conjecture. They agreed that no one could determine with any degree of accuracy whether there would be a loss of income after the taking until two or three years after the construction had been completed. Holmes acknowledged that the records of the motel, lounge and restaurant were always available to him, and that information as to the earnings of that business after August, 1970, would have been valuable in determining whether the taking caused it to sustain a loss of income. He, nevertheless, made no effort to check the income or expenses of that operation after the taking.
Jimerson checked the income of the motel, lounge and restaurant for the one year period ending June 30, 1970, and for an additional period of one year, from June 30, 1970 to June 30, 1971. He found, however, that there was a substantial increase in the income of the business the second year over what the income had been the previous year. He also determined that the value of defendant's remaining property substantially increased during that one year period. According to his estimate, defendant's remaining property had a value of $978,422.00 on June 30, 1971 (almost a year after the taking), whereas it had a value of only $871,500.00 on June 30, 1970, before the above five foot strip was expropriated. He did not attribute any significance to that great increase in value, because he explained that construction work had not been started by the Highway Department by that time. The evidence is not clear as to when construction work was begun, but the five foot strip of land was expropriated in August, 1970, and it has been owned by the Highway Department since that time. We find Jimerson's testimony to be inconsistent when he says in one breath that the remaining property increased in value more than $100,000.00 after the taking, and yet that because of the taking it decreased in value by $23,285.79.
The burden of proof rests on the landowner to establish the amount of severance damages he has sustained as a result of the expropriation. Severance damages are never presumed, and they will not be allowed if based on speculation or conjecture. They must be established by competent evidence showing that the land remaining has been diminished in value as a result of the taking. State, Department of Highways v. Miller, Smith & Champagne, Inc., 285 So.2d 855 (La.App. 1 Cir. 1973); Dixie Electric Membership Corp. v. Sibley, 280 So.2d 346 (La.App. 1 Cir. 1973); Dixie Electric Membership Corp. v. Whitehead, 280 So.2d 315 (La.App. 1 Cir. 1973).
Where the evidence shows that an appraiser assumed incorrect facts in determining that severance damages were sustained as a result of the taking, the opinion of that expert as to severance damages is not entitled to credit or weight, since it is not well grounded on facts or logic. Louisiana Power and Light Company v. Pipes, 188 So.2d 639 (La.App. 2 Cir. 1966); State, Department of Highways v. Miller, Smith & Champagne, Inc., supra.
Inconvenience to the landowner, diversion of traffic or change in attending circumstances resulting from the expropriation are not proper elements of severance damages, unless they diminish the value of the owner's remaining property. State, Department of Highways v. Daigle, 278 So.2d 525 (La.App. 3 Cir. 1973); State, Department of Highways v. Hunt, 219 So. 2d 602 (La.App. 1 Cir. 1968).
Applying the above rules to the instant suit, we have concluded that the defendant landowner has failed to sustain the burden of proof which rests upon it to show that it has sustained severance damages. The opinions expressed by the two experts called by defendant are based on the incorrect assumption that defendant has lost eight parking spaces as a result of the taking, and on the unsupported speculation *158 that an 8.1 percent reduction in parking spaces will reduce income by 8.1 percent. The evidence shows that no parking spaces have been lost. At most, the taking has made it a little less convenient for guests and employees of defendant's establishment to park and maneuver their cars in front of the motel. As already pointed out, however, inconvenience to the landowner, or a change in attending circumstances as a result of the expropriation, are not proper elements of severance damages unless they diminish the value of the owner's remaining property. The evidence in this case shows that the expropriation did not cause defendant to lose any parking spaces, and that it did not diminish defendant's income or the value of its property.
For these reasons we find that the trial judge erred in awarding defendant $20,800.00 as severance damages, and we thus reverse that part of the judgment appealed from.

Value and Relocation of Sign
A large electric sign was located in front of the motel. It was supported by three heavy posts, one of which was on the property being taken by plaintiff. The taking made it necessary for the sign to be removed from its former location. The evidence shows that the sign had a value of $10,500.00, and that it would cost $401.70 to remove it.
Mr. Rockhold, an expert called by plaintiff, testified that the sign could be moved from its original location and reinstalled a few feet west of that point on defendant's remaining property, and that the cost of removing and reinstalling the sign would be $3,300.00 Mr. Terry expressed the same views. Plaintiff contends that the award should be limited to this last mentioned figure.
The trial judge held that defendant was entitled to recover the value of the sign and the cost of removing it, amounting to the total sum of $10,901.70. We find no error in that conclusion reached by the trial judge.

Expert Witness Fees
The trial judge fixed the fee of defendant's expert Jimerson at $3,107.03, and that of Holmes at $3,365.61. These fees were assessed as costs, and plaintiff was condemned to pay the costs of the proceeding. Plaintiff complains that the fees allowed by the trial court are excessive.
We agree with plaintiff that the expert fees allowed these two appraisers are unreasonably excessive, that they are out of line with allowances made in other similar cases, and that the trial court abused the discretion vested in it in fixing the fees at those amounts.
A witness who is qualified and who testifies as an expert appraiser in a trial of this kind is entitled to additional compensation, to be fixed by the court, for his appearance in court and for the preparatory work done by him. In fixing his fees, however, the court should consider the time which reasonably should have been employed by him in making the appraisal, the degree of learning or skill required, the value of the property and severance damages involved, and the amounts allowed in other cases as witness fees. The fees allowed the expert must be reasonable and somewhat in line with the fees heretofore allowed in other similar cases. An agreement entered into between an expert witness and one of the parties to the suit as to the fee which the former is to receive for his preparatory work and testimony, or the bill submitted by that expert, or even the actual payment of such a fee to him, is not a criterion to be used by the court in fixing his expert witness fee. State v. Donner Corporation, 236 So.2d 841 (La.App. 3 Cir. 1970).
In the instant suit the fees allowed defendant's two appraisers amount to more than four times as much as the total value of the property taken, and almost one-half *159 as much as the total amount allowed for the taking and for all damages sustained by the defendant landowner. They are unreasonable and must be reduced.
We have decided to reduce the fee allowed each of the two experts called by defendant to one-half the amount allowed by the trial court. We think such an allowance is generous to defendant and to each expert, it is adequate and is as high as can be justified in this case. The fee of Jimerson thus will be reduced to $1,553.52, and that of Holmes will be reduced to $1,682.81.
For the reasons assigned the judgment appealed from is amended by reducing the amount of the award made to defendant from $36,088.95 to the sum of $15,288.95, and by reducing the expert fee allowed J. D. Jimerson to $1,553.52, and the fee allowed Will S. Holmes to the sum of $1,682.81. In all other respects the judgment appealed from is affirmed. One-half the costs of this appeal are assessed to plaintiff, and the remaining one-half of such costs are assessed to defendant.
Amended and affirmed.
WATSON, J., concurs in part and dissents in part, assigning reasons.
MILLER, J., concurs in part and for written reasons to be assigned, dissents in part.
WATSON, Judge (dissenting in part and concurring in part):
I dissent respectfully from the reversal of the trial court's award of severance damages.
The Department of Highways contends that defendant's property suffered no severance damage as a result of the taking. I believe that such a conclusion collides with reason and logic. The majority accepts this contention but only after reversing the trial court's finding of fact (the majority concluding that no parking places were lost) and concluding that the absence of the five foot strip would only inconvenience the patrons to a small degree.
The trial court found that defendant's property suffered the loss of eight front parking spaces (prior to the taking there were a total of 99), and we agree with the trial court that defendant proved severance damage resulted to the restaurant and motel from this 8.1% loss of parking space.
The fact, as found and emphasized by the majority, that the management continued to have "straight-in" parking but narrowed the driveway does not prove there was no severance damage; it emphasizes the value of parking space.
M. N. "Buddy" Hadnot, Jr., manager and part owner of the Continental Motor Lodge, testified that he limits seated banquets on the premises to 225 people but has had as many as 900 people at a reception. Civic organizations meet for lunch with an average attendance ranging from 20 to 65. He said the latter meetings always involve parking problems and complaints about lack of parking space. The restaurant itself seats 116 people.
The estimate of severance damage by Holmes is attacked by the Department as being based on conjecture and inadequate information.
The appraisal of Holmes states that the cost approach was used in estimating the value of the improvements on the property, the market data approach for an indication of land values and the income approach for an indication of the value of the property before and after the taking. He analyzed the parking spaces available before and after the taking and found that there would be a shortage of parking facilities for four months of the year after the taking which would result in an inconvenience to patrons and a loss of income to the property. The occupancy rates showed *160 that the parking need for registered guests of the motel alone for these four months would be as follows:
February: 54 spaces
June: 63 spaces
July: 64 spaces
August: 63 spaces
Appraiser Holmes used the income approach to show a value before the taking of $771,500 and a value after the taking of $750,700 or severance damages of $20,800 to the property.
The Department of Highways contends that this matter is similar to State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969), and that Holmes' estimate of loss of market value is highly speculative.
Holmes admitted that he did not use any income figures after the taking but instead relied on a projection of what effect the loss of parking would have on the future income stream. However, the construction was not completed as of the date of trial and Holmes therefore did not feel a true "after" picture was available at the time of trial.
LSA-R.S. 48:453 provided as of the time this suit was filed in 1970 that damage to the remainder of the property is determined as of the date of trial. Under the circumstances, I believe the estimate of defendant's expert Holmes was an informed and reasonable one. This matter falls within the rule enunciated by the Supreme Court in State, Dept. of Hwys. v. Denham Springs-Dev. Co., Inc. (La.1973), 307 So. 2d 304. There, the trial court refused to accept the opinion of the Department of Highways' experts that the remainder of defendant's property suffered no severance damage and relied on defendant's appraisers' testimony to award $64,220.97 for severance damage from loss of parking space, consisting of 42 parking spaces lost from a total of 265. The Court of Appeal (294 So.2d 281, La.App. 1 Cir. 1974) followed the Mason case, supra; rejected the testimony of one of defendant's experts as being based on speculative factors; rejected the other for his failure to arrive at an "after" value for the remainder; and reduced the award for severance. The Supreme Court found that the defendant had adequately proved severance damages and reinstated the award of the trial court, stating:
"The informed and reasoned opinion of experts, corroborated by the facts in the record, may adequately prove a severance damage loss, especially where accepted by the trier of fact." 307 So.2d 307.
The majority does not deal with the Denham Springs case, which is a 1975 decision of the Supreme Court. I find it squarely in point and, in my opinion, it must be followed or distinguished.
I am also impressed with the logical analysis and reasoned application of Denham Springs by our learned brother, Judge Hall, of the Second Circuit, in State, Dept. of Highways v. Nisbet Properties, Inc. (La.App. 2 Cir. 1975), 309 So.2d 398, as follows:
"Severance damages are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Department of Highways v. Denham Springs Development Co., Inc., supra; State, Department of Highways v. Hoyt, 284 So.2d 763 (La.1973). Such damages are determined as of the date of trial. The burden of proving such damages is on the landowner. The expropriating authority may offset against severance damages any special benefits accruing to the remainder of the property. The authority has the burden of proving these special benefits. State, Department of Highways v. Tripper Realty Corp., 276 So.2d 315 (La.1973).
It seems clear to us that there was some decrease in the value of the remaining *161 property after the taking. Surely, the reduction in already limited parking spaces would adversely affect the value. The opinion of defendant's expert that the value of the property, one economic unit, was decreased by more than the value of the property taken is reasonable and convincing.
This property was developed as one integrated economic unit for a specific use and lessee. Its value for this highest and best use necessarily relates to continuing the economic unit intact. Adequate parking and a potential for expansion are integral parts of the package. Reduction or limitation of these features necessarily adversely affected the value of the remaining propertyadversely affected what an investor would pay for the property.
That there is damage seems evident and the amount of damages must be measured by the available evidence and tools. The judgment of the expert witnesses based on their experience and expertise is helpful." 309 So.2d 401.
In my opinion, the trial court's award for severance damage herein is free of manifest error and should be affirmed. State, Department of Highways v. Clement (La.App. 1 Cir. 1975), 311 So.2d 5.
I concur in the affirmance of the award for the sign and in the 50% reduction of the expert witnesses' fees.
Therefore, I respectfully concur in part and dissent in part.
MILLER, Judge (concurring and dissenting).
I concur in the opinion with the exception of the conclusion that the trial court committed manifest error in setting the amount to be awarded as landowner's expert witness fees. I respectfully dissent from that holding.
We agree that defendant landowners should be compensated for those expert witness fees reasonably incurred to obtain testimony for trial. While I suspect the award for expert fees in this case are excessive, I hold to the view that we are not to increase or reduce expert fees based on impressions on the matter. Instead, it is submitted, we are bound by the record. When the record supports a finding of manifest error in assessing expert fees, we should not hesitate to amend the award. In this connection it would be relevant to know what the State pays its experts and exactly how much time their experts spent on the particular case. There is no such evidence in this record.
Landowners' experts charged $150 per day for their services. The majority has not expressly held this to be an excessive charge. There is no evidence to suggest that $150 per day is excessive for properly qualified experts.
The experts kept records showing the days they worked, and there is no suggestion they should have completed their work in less time. The State attempted to show these experts were charging for time spent on another case. The State failed, and the majority has not suggested the State succeeded in that effort.
When considering the reasonableness of the charge, we must note these experts spent a great deal of time preparing their case to show severance damages. Does the fact that they were not successful mean that they are not entitled to be paid for their arduous, extensive, and documented preparation?
The majority seems to hold there must be some correlation between the value of the property taken and the amount of the award for expert fees. While this is a factor to be considered in determining whether the fees were reasonably incurred, this factor should not be controlling.
I respectfully dissent from the reduction in the trial court's award for landowner's expert fees.