322 So.2d 418 (1975)
The STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
J. W. GORDY et ux., Defendants-Appellees.
No. 5062.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Writ Refused February 6, 1976.
*419 D. Ross Banister, Wm. W. Irwin, Jr., Jerry F. Davis, Johnie E. Branch, Jr., Alva Jones and John H. Helm, by Johnie E. Branch, Jr., Baton Rouge, for plaintiff-appellant.
Jackson & Smith, by Chris Smith, III, Leesville, for defendants-appellees.
Before HOOD, CULPEPPER, MILLER, DOMENGEAUX and WATSON, JJ.
HOOD, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Highways, under LSA-R.S. 48:441 et seq. The defendants are J. W. Gordy and his wife, Merle Clack Blackman Gordy. Plaintiff deposited $1,682.00 as its estimated value of the property taken and damages. Defendants answered demanding an award of more than the amount deposited. Judgment was rendered by the trial court awarding defendants $29,695.87, less the amount of the deposit, and fixing the fees of the two expert appraisers called by defendants at $3,355.75 and $3,173.30, respectively. Plaintiff appealed.
The issues presented are: (1) Whether the award made for the property taken is *420 excessive; (2) whether defendants sustained severance damages, and if so, whether the amount awarded as such should be reduced; and (3) whether the fees allowed defendants' expert appraisers are excessive.
The order of expropriation was signed on October 23, 1970. Defendants at that time owned a tract of land, consisting of about 1.593 acres, located on the east side of and adjacent to U. S. Highway 171, in the City of Leesville. The property was irregular in shape, having a frontage of 248.85 feet on the above highway, and an average depth of about 278.85 feet.
Defendants own and operate a 49-unit brick veneer motel and a restaurant on the above property, the motel being known as the "Redwood Motel." The front, or west side, of the motel faces the highway. Before the taking the front of the motel was 15.3 feet from the east edge of the highway right-of-way. A neon sign containing the name of the motel and the word "cafe" was located on defendants' property between the motel and the highway.
By this proceeding the Department of Highways has taken the front five feet of the parent tract for the purpose of widening and improving Highway 171. The part taken is five feet wide and 248.85 feet long, comprising a total of 1244.25 square feet. After the taking there was a space of only 10.3 feet between the front of the motel and the east edge of the new highway right-of-way. Also, after the taking, the neon sign in front of the motel extended a few feet over the new highway right-of-way, making it necessary to remove or relocate that sign.
The trial court awarded defendants the aggregate sum of $29,695.87, itemizing that award as follows:

Land taken $ 2,488.50
Improvements 707.37
Severance damages 26,500.00
 __________
Total $29,695.87

On this appeal, plaintiff contends, first, that the award of $2,488.50, or $2.00 per square foot, for the property taken is excessive and should be reduced.
Four expert appraisers testified at the trial. Will Holmes of Lufkin, Texas, and J. D. Jimerson, of Carthage, Texas, were called by defendants. Norman Terry, of DeRidder, and Darrel V. Willet, of Pineville, Louisiana, testified for plaintiff.
Holmes felt that the land owned by defendants at the time of the taking had a value of $1.00 per square foot, but that the front five feet had a value of $2.00 per square foot. Jimerson valued the parent tract at $.98 per square foot, but testified that the part taken had a market value of $2.50 per square foot. Terry concluded that the parent tract was worth $1.00 per square foot, and Willet estimated its value at $.72 per square foot. Both of the last two named appraisers felt that the five foot strip of land taken had the same value per square foot as did the rest of the parent tract.
The trial judge found that the land owned by defendants, exclusive of the improvements, had a value of $1.00 per square foot, but that the part expropriated was worth $2.00 per square foot. He thus awarded defendants $2,488.50 as the value of the 1244.25 square feet of property taken. No reason was assigned by the trial judge for placing a higher value on the front five feet, except that "a rectangular tract fronting a major highway only five foot in depth and 248.85 feet long is extremely rare."
We think the trial judge erred in concluding that the land taken had a higher value per square foot than did the rest of the parent tract. The so-called "front landrear land" rule is not applicable here, because the entire parent tract is being used for its highest and best use, that is, for commercial purposes. The evidence convinces us that the depth of the parent tract from the highway is ideal for that purpose, and that no part of that tract, including the front five feet, has a greater *421 value per square foot than does any other part.
We conclude that the land taken had a market value of $1.00 per square foot at the time of the taking, and that the amount awarded to defendants as the value of the land expropriated must be reduced to $1,244.25.
No issue is raised as to the award of $707.37 made for the improvements taken, so that part of the judgment appealed from will not be disturbed.
Plaintiff contends, however, that the trial judge erred in awarding defendants $26,500.00 as severance damages. It takes the position that defendants' remaining property was not damaged at all as a result of the taking.
The trial judge found that the taking of a five foot strip off the front of the parent tract caused defendants to lose some parking spaces which theretofore were available for use by guests of the motel. He accepted the opinion expressed by Mr. Jimerson, one of the expert appraisers called by defendants, that the lack of these parking spaces would result in a loss of income from the operation of the motel, and that in turn would cause a reduction in the value of defendants' remaining property.
According to Jimerson's testimony, the 49-unit motel had a total of 55 parking spaces prior to the taking. He felt that four parking spaces would be lost as a result of the expropriation of the front five feet of the property, and he reasoned that since 7.27 percent of the parking spaces would be lost the income of the motel would be reduced by 7.27 percent after the taking. He determined that the net income of the motel for the year preceding the taking was about $49,700.00, and he concluded that the average annual income of that establishment after the taking would be about $46,000.00. By using a capitalization rate of 14 percent, he computed the value of the motel before and after the taking, based on its actual and projected income, and he concluded that the value of defendants' remaining property would be $26,500.00 less after the taking than it was before. He expressed the opinion, therefore, that defendants suffered severance damages in that amount as a result of the taking.
Defendants' other appraiser, Holmes, found that there were 50 parking spaces available before the taking, and that four of them, or 8 percent of those spaces, would be lost as a result of the expropriation. He used the same procedure as did Jimerson in determining the before and after value of the motel, and concluded that defendants had sustained severance damages of $28,743.00 as a result of the taking.
Both of the appraisers called by the Highway Department found that no severance damages were sustained as a result of the taking.
Prior to the taking, vehicles frequently were parked in front of and perpendicular to the motel. Defendants contend that after the taking cars will no longer be able to park "head-on" or perpendicular to the motel, but instead they will have to be parked parallel to it. They argue that before the taking 12 cars could be parked perpendicular to the motel, whereas after that time only eight could be parked parallel to it, and that the taking thus resulted in a loss of four parking spaces. We agree that a loss of parking spaces would result if the change in parking practices suggested by defendants becomes necessary.
The evidence shows, however, that since there was a space of only 15.3 feet between the motel and the highway right-of-way, and most automobiles are longer than that, the rear of the vehicles parked in that manner extended two or three feet over or onto the right-of-way. There is nothing in the record to indicate that vehicles could not continue to park perpendicular to the motel after the taking, with more of each *422 car extending over the right-of-way. Plaintiff argues, persuasively, that if defendants use a part of the right-of-way in determining how many cars could have been parked in front of the motel before the taking, then they also should use a part of the right-of-way in determining how many vehicles could be parked there later. If viewed in that light, of course, there would be no loss of parking spaces.
The experts differ in their opinion as to whether there would be a loss of spaces if vehicles were required to be parked completely on the motel property, both before and after the taking. Defendants' appraisers feel that a loss of parking spaces would result, even with such a requirement. The testimony of plaintiff's expert, Willet, however, is convincing that there would be no loss of parking spaces as a result of the taking if parked vehicles were required to remain on motel property before and after the expropriation. He testified and demonstrated by plats drawn to scale that a maximum of seven vehicles could be parked at sharp angles in front of the motel so that they would barely remain within the original 15.3 foot parking space. He also showed that exactly the same number of vehicles could be parked parallel to the motel, within the 10.3 foot wide parking area which remained after the taking. We are not convinced that the taking of the front five feet of defendants' property will reduce the number of parking spaces.
Assuming, however, that the taking will cause the loss of four parking spaces, we think the evidence nevertheless fails to show that defendants have sustained or will sustain any severance damages as a result of the taking.
The records of the Redwood Motel show that it had an average occupancy rate of only 53.4 percent from August, 1969, through October, 1971. The average monthly rate of occupancy ranged from a low of 43.12 percent to a high of 59.52 percent. Even on weekends, when the occupancy rate was the highest, an average of only 67.81 percent of the available units were occupied. The evidence indicates that, assuming the greatest loss of parking spaces anticipated by any expert, the motel would have to reach an occupancy rate of 96 percent before parking would become a problem. The motel has never approached that rate. There are no banquet or meeting rooms in the motel, and there is no showing that additional parking spaces are needed for the restaurant or for any purpose other than for use by occupants of rooms or units of the motel. The evidence thus fails to show that the loss of four parking spaces, assuming that such a loss has occurred, will reduce the income from or the value of defendants' remaining property.
The issues presented in the instant suit are similar to those which we considered in State of Louisiana, through the Department of Highways v. Ross Continental Motor Lodge, Inc., 315 So.2d 151 (La.App. 3 Cir. 1975). The motel involved in that suit is near the one which is involved here, and the same appraisers who testified for defendants in this case testified for the defendant in the Ross Continental case. In that case we rejected the opinions expressed by Holmes and Jimerson that the defendant motel would sustain a loss of income proportionate to the loss of parking spaces, on the ground that those opinions were based on speculation or conjecture, and that they were not grounded on facts or logic.
The burden of proof rests on the landowner to establish the amount of severance damages he has sustained as a result of the expropriation. Severance damages are never presumed, and they will not be allowed if based on speculation or conjecture. They must be established by competent evidence showing that the land remaining has been diminished in value as a result of the taking. Where the evidence shows that an appraiser assumed incorrect facts in determining that severance damages were sustained as a result of the taking, *423 the opinion of that expert as to severance damages is not entitled to credit or weight, since it is not well grounded on facts or logic. See State of Louisiana, through the Department of Highways v. Ross Continental Motor Lodge, Inc., supra, and cases cited therein.
In our view, the expert opinion relied on by the trial judge in the instant suit to support the award of severance damages made to defendants is based on speculation and conjecture and on an incorrect assumption of facts. We conclude that defendants have failed to sustain the burden of proof which rests on them to show that they sustained severance damages as a result of the taking. The judgment appealed from will be amended, therefore, to delete the award of severance damages made to defendants.
Plaintiff contends, finally, that the fees allowed the two experts who were called by defendants are excessive and should be reduced. We note that the fees allowed those two experts by the trial judge amount to the aggregate sum of $6,529.05. That is more than three times as much as the total award of $1,951.62 which we find should be made to defendants. Plaintiff deposited $1,682.00 in the registry of the court at the time of the taking, so defendants actually have recovered the net sum of $269.62 as the result of this litigation. The fees allowed defendants' two experts amount to more than 24 times as much as the net sum recovered.
Both of defendants' appraisers used the "front landrear land" rule in appraising the property taken. We have found that that rule is not applicable here, so the opinions of these two experts as to the value of the property taken served no useful purpose in this case. There was no dispute as to the value of the improvements which were taken. A substantial part of the work done by defendants' appraisers was devoted to an attempt to show that defendants sustained severance damages as a result of the taking. We have found that their opinions as to severance damages were based on speculation and conjecture and on an incorrect assumption of facts. For that reason their conclusions as to severance damages also were of no use to us in determining the award which should be made in this case.
The parties to an expropriation suit may engage appraisers of their choice, and they may agree to pay those experts specified fees for their services. The experts may also testify as to the time they spent in preparatory work and in testifying. However, an agreement entered into by a party as to the fee which an expert appraiser is to receive, or the statement of the expert as to his charges or even the actual payment of such a fee to the expert, are not binding on the court and are not criteria to be used by the court in fixing the expert fees which are to be assessed as costs in the suit. LSA-R.S. 13:3666; State v. Donner Corporation, 236 So.2d 841 (La.App. 3 Cir. 1970); Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State Department of Highways v. Black, 207 So.2d 583 (La. App. 3 Cir. 1968).
An expert appraiser who testifies in an expropriation suit is entitled to reasonable compensation for his appearance in court and for preparatory work done by him, but the fees allowed him and taxed as costs must be reasonable and they must be somewhat in line with the fees heretofore allowed by the courts of this state in other similar cases. State, Department of Highways v. Black, supra. The fees allowed expert witnesses also should be "based on the relative usefulness of their respective testimony." Melancon v. Oilfield Lubricant Services, Inc., 292 So.2d 908 (La.App. 1 Cir. 1974).
In determining whether the fee allowed an appraiser and taxed as costs in an expropriation suit is reasonable, we think consideration must be given to the question of whether the preparatory work *424 done by the appraiser was reasonably necessary, whether it actually tended to show the value of the property taken or severance damages, and whether the conclusions he reached based on that preparatory work were of some usefulness in determining the award which should be made. We also believe that consideration must be given to the value of the property being taken and the amount of severance damages sustained by the landowner. An appraisal fee greatly in excess of all of the awards made is not reasonable and should be reduced.
In State of Louisiana, through the Department of Highways v. Ross Continental Motor Lodge, Inc., supra, substantially the same amounts were allowed to the same two appraisers by the trial court. We reduced the fees to one-half the amount awarded by that court. In the Ross Continental case, however, the award made to the defendant landowner was substantially higher than the award which is being made to defendants in this suit, and we think that circumstance justified the allowance of higher expert fees in that case than can be justified in the instant suit.
We believe that a fee of $750.00 for each of those experts is adequate and is as high as can be justified in this case.
For the reasons herein set out, the judgment appealed from is amended in the following respects: (1) The judgment in favor of defendant and against plaintiff is reduced from $29,695.87 to the sum of $1,951.62, less the amount deposited by plaintiff in the registry of the court, with legal interest on the balance due from October 23, 1970, until paid, and all costs of these proceedings; and (2) the fees allowed defendants' expert witnesses, Will S. Holmes and J. D. Jimerson, are reduced, from $3,355.75 and $3,173.30, respectively, to the sum of $750.00 each, and they are hereby fixed at that amount and are assessed as costs in these proceedings. Except as herein amended, the judgment appealed from is affirmed. All costs of these proceedings, in the trial court and on appeal, are assessed to plaintiff-appellant.
Amended and affirmed.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
WATSON, J., concurs in part and dissents in part and assigns reasons.
MILLER, J., concurs in part and dissents in part assigning written reasons.
DOMENGEAUX, Judge (concurring in part and dissenting in part).
The front-land rear-land concept of awarding compensation is well entrenched in both the statutory and jurisprudential law of Louisiana and may be used in cases where it becomes the appropriate tool. See State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3rd Cir. 1972), cert. denied 272 So.2d 696 (La. 1973) ("No error of law."); State, Through the Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973), and other cases cited therein. However, I agree that this appraisal concept is not applicable to the facts of this case and therefore concur in the reduction of the amount awarded to defendants as the value of the land taken to the sum of $1,244.25.
I also agree that the expert fees of the two landowners' appraisers should be fixed in the amount of $750.00 each.
I disagree, and therefore dissent from the portion of the majority opinion which disallows severance damages, and am of the opinion, for the reasons assigned by Judge Watson, that this case should be remanded for a new trial limited to the question of the amount of severance damages.
WATSON, Judge (dissenting in part and concurring in part):
I do not agree with the majority that the trial court erred in awarding $2,488.50 for *425 the land taken or in finding severance damages. However, as to the severance damages, the theory of the plaintiff's experts and the damages calculated by these experts are not convincing. I would remand for the taking of additional evidence on the amount to be awarded for severance damages. As to the award of expert witness fees, I agree that there is error but I differ with the extent of the reduction by the majority.
I. Value of the Land
As to the land itself, the trial court concluded that defendants' entire tract is correctly valued at $1.00 per square foot on the basis of a comparable sale of adjoining property to the south. However, since the property taken consisted of frontage on a major highway five feet in depth and 248.85 feet long, the trial court gave it a higher value of $2.00 per square foot. The trial court multiplied the total area taken, 1244.25 square feet, by $2.00 to arrive at a value of $2,488.50 for the land. I find no error in the trial court's award of a higher value for the front portion of defendants' property, since it in fact had a higher market value. State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La. 1973); State, Dept. of Highways v. Guaranty Realty Corp., 295 So.2d 490 (La.App. 3 Cir. 1974).
II. Severance Damages
The trial court held that the motel had lost parking space and had been damaged by loss thereof. The estimate of appraiser Jimerson was relied on to award $26,500.00 for severance damages.
The Redwood now has less legal parking than it had prior to the taking. The sole testimony to the contrary is that of appraiser Willet, yet his appraisal includes a report by Lloyd J. Rockhold, a Baton Rouge construction consultant, who found a loss of legal parking. The evidence establishes, in my opinion, that defendants' property suffered a loss of parking. The majority reverses this factual finding by the trial court when there is ample evidence (a preponderance, I believe) to support it.
Having found a loss of parking I would adopt the incisive reasoning of the Second Circuit, which said:
"It seems clear to us that there was some decrease in the value of the remaining property after the taking. Surely, the reduction in already limited parking spaces would adversely affect the value. The opinion of defendant's expert that the value of the property, one economic unit, was decreased by more than the value of the property taken is reasonable and convincing." State, Dept. of Highways v. Nisbet Properties, Inc., 309 So.2d 398 at 401 (La.App. 2 Cir. 1975).
Therefore, the conclusion is obvious, to me, that defendants' property sustained severance damages. State, Dept. of Highways v. Denham Springs-Dev. Co., Inc., 307 So.2d 304 (La., 1975).
However, I find the theory of calculating damages used by plaintiffs' experts to be unconvincing. I would remand for a new trial on that issue.
III. Expert Witness Fees
Concerning the expert witness fees, I find it necessary to refer to State, Dept. of Hwys. v. Ross Continental M. L., Inc., 315 So.2d 151 (La.App. 3 Cir. 1975). There, the fees of the same experts, Jimerson and Holmes, were fixed at $3,107.03 and $3,365.61. Here, they are fixed at $3,355.75 for Jimerson and $3,173.30 for Holmes. The comparable sales utilized are identical in both instances. In Ross, supra, this Court found the fees allowed excessive and unreasonable and reduced them by 50%. In view of the fact that a great deal of the work here repeats that previously done in Ross, I would cut these fees by 50%, but I see no justification for reducing them to $750.00 each, as does the majority.
*426 I respectfully dissent, and concur, as indicated.
MILLER, Judge (concurring and dissenting).
I concur, except insofar as we find manifest error in the trial court's award for landowner's expert's fees.
I respectfully dissent from the reduction in expert fees for the reasons assigned in my dissent in State v. Ross Continental M. L., Inc., 315 So.2d 151 at 161 (La.App. 3 Cir. 1975).