JOHNSON, Judge.
This is an appeal from a judgment of expropriation. The State of Louisiana, Through the Department of Highways, (hereinafter referred to as Department) expropriated a tract of land owned by defendants, Rose Ferguson Gormley, et al., in Leesville, Vernon Parish, Louisiana. The general purpose was to relieve congestion of traffic on Highway 171 in the City of Leesville. Highway 171, which was formerly a two-way street in Leesville for traffic going north and south, was to be reconstituted as a one-way street with two lanes for traffic headed north. To the west one block, what was formerly 6th Street, was to be developed as Highway 171 South with two lanes for south bound traffic. In other words, Highway 171 would be divided thereby increasing and speeding up the flow of traffic on this highway through Leesville.
As stated, this was the general objective. In order to effectuate this objective, it was necessary for the Department to build an access street west of and parallel to new 171 South. .734 of an acre of defendants’ property was expropriated to build this access street. This appeal is by the Department from a judgment in favor of the ap-pellee-landowner-defendant.
The parties stipulated and agreed that the value of the land taken was $8,840.00. The parties also stipulated that the agreement as to land value was not to be binding with respect to any other portions of the case. In other words, the agreement as to land value was not to be binding or controlling with respect to the issue of severance damages or any other issues herein. The trial court granted $22,496.00 as severance damages. The Department-appellant denies any severance damage. It alternatively alleges that, if there is any severance damage, it is far outweighed by special benefits accruing to the property. The Department also appeals from an award of $1,450.70 to T. J. Stephens for an appraisal fee as appraiser for the landowner. The Department also objects to the allowance of $100.00 as compensation as expert fees for two realtors who testified. The trial court accepted them as expert realtors who knew land values in the area.
The Court finds that counsel for the Department has concisely and accurately set forth the factual situation herein and takes the liberty of adopting its statement of facts.
“Leesville, Louisiana, in Vernon Parish is located on State Route La-US 171, between Lake Charles and Shreveport, Louisiana. La-US 171 is the primary highway between the two latter cities and coupled with the presence of nearby Fort Polk, the automobile traffic through Leesville is extremely heavy. Because La-US 171 ran through the middle of Leesville and was only a two-lane highway, the increasing traffic problem had to be alleviated. The cost and expected • impact of acquiring additional right of way adjacent to this highway in part of Leesville was prohibitive.”
“In order to relieve the situation, it was determined, by those charged with the duty, to make the present right of way of La-US 171 two lanes going north and to branch off north of Leesville with two lanes going south, tying back in with the new four-lane portion in south Leesville. *861 A portion of this southerly route will proceed along the city right of way of North 6th Street.”
“Just north of where North Sixth Street connects with Havana Street, the Kansas City Southern Railway is located, thus necessitating construction of an underpass to accomodate the two-lane southerly route. This entails excavating an incline reaching approximately eighteen feet in depth below the original surface. Whereas the residences facing east on North Sixth Street had ground-level egress and ingress, the greatest number of them between the intersection of Havana Street and the intersection of West Mechanic Street to the south are now left facing a bluff because of the excavation. These residences were completely deprived of all means of egress and ingress.”
“Havana Street, formerly connecting with North Sixth Street, has become dead-end at that location. Consequently, a large black community, known as the Crossing, was deprived of access to North Sixth Street, requiring a very circuitous route to get out of the community.”
“To relieve this problem, a paved street fifty feet wide and running parallel to and west of North Sixth Street between Havana and West Mechanic Streets has been constructed. The residences and the black community now have a means of access.”
“This street, designated as Street A, was built as a part of the project of improving North Sixth Street. Simply stated, the highway underpass created a problem and construction of Street A has relieved that problem. In this case, Street A is variously referred to as an “access” street. More properly, it could be termed a “relief” street. Fortunately, the property which is the subject of this suit is not affected by the North Sixth Street construction, all of this improvement being constructed within the bounds of the existing right of way and removed from the excavation area.”
We take the liberty of making a part hereof Exhibits “A” and “B” attached to plaintiff’s brief. Exhibit “B” is a small scale copy of the map depicting this property and the property expropriated for the access street. Exhibit “A” is a portion of the city map of Leesville. The Court attaches its own “Court Exhibit C” showing the property involved. The streets as they existed previously on “Court Exhibit C” are shown in solid lines. The new Highway 171 South and Street A (access street) are delineated in dashed lines. These exhibits, along with the Department’s outline of the problem hereinabove, make clear what is involved herein.
The trial court in its Reasons for Judgment discussed the comparable sales offered by the Department’s appraiser, Mr. Futrell and by the defendants’ appraiser, Mr. Stephens. Apparently, the sales used by both of the appraisers were not truly compara-bles in the opinion of the court. The Court did discuss a commercial offer testified to by the “expert lay witnesses” in this case. These were witnesses for the defendant landowner who were realtors in Leesville. They were familiar with land appraisals in the general area. There is legal precedent for accepting such witnesses’ testimony. State, Department of Highways v. Gielen, 184 So.2d 737 (La.App. 3 Cir. 1966) and Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App. 3 Cir. 1972).
The trial court took judicial notice of the type of traffic which could be expected to flow across the subject property by reason of opening it up to traffic from the Havana Street section. The Court found that the Havana Street section was an area of cheap night clubs. It took judicial notice, after the trial of the case, of the fact that quite a number of prosecutions for the use of drugs and other criminal activity had resulted from activities in this general area of Havana Street. This area was known as the “Crossing”.
Counsel for the Department strenuously objects to the fact that the trial court took judicial notice of the various criminal prosecutions arising from the area known as the *862 “Crossing”. The trial judge presided in quite a number of these prosecutions. Counsel for the Department maintains that it is not proper for the trial court to consider other judicial records concerning which no mention has been made during the trial. He also objected to having these other records in criminal matters made a part of the record after the trial of this case. They complain that this evidence which is brought in by the court on its own motion, after the case has been submitted, is completely improper. Counsel for the Department maintain that the court is in effect substituting its opinion for that of the experts who testified at the trial. It is true that several of the witnesses for the defendant landowner did make mention of the type of traffic from the “Crossing” section through the new Street A (access road).
While there may be merit to the contentions of counsel for the Department, we do not find it necessary to consider these objections, in that we find manifest error in the trial court’s conclusion, toward severance damages even if this objectionable evidence is considered.
The trial court’s conclusion to award severance damages is based, almost entirely, upon the fact that following completion and opening of the access street undesirable traffic from the “Crossing” section will flow through the subject property. Prior to the four laning of Highway 171, this very same traffic traveled in front of the subject property on North 6th Street and along side the subject property on West Mechanic Street.
The measure of severance damages is the difference between the market value of the remaining property before and after the expropriation. A difference in value occurs when some detrimental or devaluing condition, which did not exist prior to the taking comes into existence as a result of the expropriation. In the instant case, the asserted devaluing or detrimental condition existed prior to the taking. We are at a loss to understand why this same traffic, which will proceed through the subject property, is any more detrimental, onerous or burdensome than the prior traffic from the same section which proceeded along side and in front of the subject property.
In any event, the record clearly reflects that any minimal severance damage which may have been suffered is far outweighed and offset by the special benefits accruing to the subject property as a result of the construction of this modern street.
We are not concerned in this case with any benefits which might accrue to the landowner by reason of the building of Highway 171 South in front of his property. We are only concerned with the benefit or detriment that Street A might have to this property. As stated by this court in State, Department of Highways v. Eubanks, 345 So.2d 533 (La.App. 3 Cir. 1977), we are only concerned with any advantages which accrued to this property as a special or peculiar benefit. The matter of special benefits is defined in Eubanks on page 534 as follows, and I quote:
“[1] In discussing this issue, we must consider whether or not any special benefits accrued to defendant-appellee’s remaining property as a result of the taking. We have little difficulty in finding that special and peculiar benefits, as distinguished from general benefits, accrued to the remainder of defendant-appellee’s property. Special benefits have been defined in our jurisprudence as:
“ ‘. . . those affecting a particular estate by reason of its direct relationship to the improvements. If, as a result of constructing any new work, the remaining land or part of it is left fronting on a road or street, and the land fronting the road or street is more desirable and more valuable because of the frontage, the advantage thus gained is a special or peculiar benefit, and damages to the remaining property may be offset by such benefits.’
“Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, at 660-661 (1941), and cases cited therein; LSA-R.S. 48:453; State Dept. of Highways v. Davidson, 319 So.2d 808 (La.App. 1 Cir. *863 1975); State Dept. of Highways v. Genest, 218 So.2d 114 (La.App. 3 Cir. 1968).”
The State had as its expert appraisal witness, one Perry Futrell. His testimony is to the effect that this property especially benefited from the taking of the road necessary to the construction of Street A, see Exhibit “B” and Court Exhibit “C”. As can be seen from the map, and from considering the evidence herein, this property now has a paved street with rollover curbs measuring approximately 555 feet on either side. This street is approximately 220 feet West of and parallel to the new highway one block to the East. There is considerable amount of testimony by the various experts as to the highest and best use of this land. It is apparent to us from the evidence that the east remainder of this property, consisting of some 2.263 acres, has become prime commercial property, located as it is with improved streets on three sides thereon, and located in downtown Leesville. The west remainder of the property consisting of some 6.30 acres cannot but be greatly benefited by the frontage of some 555 feet of a 50 foot paved street with roll-over curbs. This is true irrespective of whether this property is used for residential or commercial purposes. The Court has reviewed the evidence and reviewed the reports of the various appraisers. It is frankly at a loss to understand how an appraiser could arrive at a conclusion that this property has been diminished in value as a result of the construction of this modern street through this property.
The Court has reached the conclusion that the Department appraiser, Futrell, has correctly appraised the special benefits accruing to this property as a result of the construction of this street. We reproduce herein the written report of Perry Futrell showing his assessment of the monetary value of the special benefits accruing to the property as a result of the taking and improvement of this street. We label the same “Court Exhibit D”.
We consider that there might be some slight severance damage caused by the taking. We hold, however, that any such severance damage is far outweighed by the special benefits accruing to this property. An example of some slight severance damage is the northern portion of the east remainder which is only left with a depth of approximately 90 feet.
We find that appraiser, Futrell, has correctly determined the special benefits herein.
We find that the trial court committed manifest error by awarding severance damages in the amount of $22,496.00. We hold that the defendant is entitled to no severance damages herein and we therefore reverse that portion of the judgment of the trial court.
The next question for consideration is whether or not the award of $1,450.70 to T. J. Stephens as an appraiser for defendant is excessive. The Court awarded this appraiser the exact amount of his bill. We feel that the law with respect to the question is well set forth by our decision, State, Department of Highways v. Gordy, 322 So.2d 418, on pages 423 and 424 (La.App. 3 Cir. 1975) and I quote:
“[6,7] The parties to an expropriation suit may engage appraisers of their choice, and they may agree to pay those experts specified fees for their services. The experts may also testify as to the time they spent in preparatory work and in testifying. However, an agreement entered into by a party as to the fee which an expert appraiser is to receive, or the statement of the expert as to his charges or even the actual payment of such a fee to the expert, are not binding on the court and are not criteria to be used by the court in fixing the expert fees which are to be assessed as costs in the suit. LSA-R.S. 13:3666; State v. Donner Corporation, 236 So.2d 841 (La.App. 3 Cir. 1970); Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State Department of Highways v. Black, 207 So.2d 583 (La.App. 3 Cir. 1968).” . . .
“[9] In determining whether the fee allowed an appraiser and taxed as costs in an expropriation suit is reasonable, we *864 think consideration must be given to the question of whether the preparatory work down by the appraiser was reasonably necessary, whether it actually tended to show the value of the property taken or severance damages, and whether the conclusions he reached based on that preparatory work were of some usefulness in determining the award which should be made. . . . ” (Emphasis ours)
The Department complains of the allowance of a fee $1,450.70 for the landowner’s appraiser, T. J. Stephens. This was the exact amount of the bill of appraiser Stephens. We do not consider that the court is bound under the new constitution to pay the exact amount of a bill submitted by an appraiser. This exact question was considered by this court recently in State of Louisiana, Through Department of Highways v. Champagne, 356 So.2d 1136, and I quote:
“We do not construe the constitutional requirement that a condemnee be compensated “to the full extent of his loss” as divesting courts of some control over the assessment of costs in expropriation matters, and specifically in the assessment of reasonable sums to compensate the landowner for the fees of experts retained on his behalf. Rather, we believe that the jurisprudence which declares that such fees must be reasonable and based upon appraisals which were necessary and useful in assisting the trial court in making its determination of the proper award is still viable. Even under the provisions of the 1974 Constitution, inflated claims for appraisal fees, made in bad faith and for the purpose of driving up the ultimate amount of court costs must be disallowed. We conclude that this Court retains the power to review and alter awards for appraiser’s fees as necessary.”
In this case, we do not find that the trial court abused this much discretion in awarding such a fee to T. J. Stephens. It was necessary for the landowner to employ an appraiser in order to prosecute his claim for compensation. Mr. Stephens spent a great deal of time and effort, as the record will show, in making appraisals and studying the records for comparable sales. He also prepared a lengthy report for consideration by the court in addition to his court appearance. Even though we disagree with the finding of Mr. Stephens, we do acknowledge the considerable amount of work that he performed. We find that his fee is reasonable and in line with awards' made by other courts in similar cases. See State, Department of Highways v. Gordy, supra. We also approve the fees of $100.00 each to the witnesses B. J. Lewis and J. S. Burnley.
For the above and foregoing reasons, the judgment appealed from is amended in the following respect: The judgment in favor of defendant and against plaintiff is reduced from $31,334.00 to the sum of $8,838.00, less the amount deposited by plaintiff in the registry of the court, with legal interest on the balance due from December 30, 1974 until paid, and all costs of these proceedings. Except as herein amended, the judgment appealed from is affirmed.
Costs of this appeal are to be borne one-half by appellant and one-half by appellee.
AMENDED AND AFFIRMED.
*865 EXHIBIT A
[[Image here]]
*866 EXHIBIT B
[[Image here]]
*867 EXHIBIT C
[[Image here]]
*868 EXHIBIT D
[[Image here]]